BALTIMORE & O. R. CO. v. FRIEL.

(Circuit Court of Appeals, Third Circuit. December 2, 1896.)

1. TRIAL—PRAYERS FOR INSTRUCTIONS.
    It is proper and judicious practice for the court to read to the jury only such prayers as are affirmed, and to tell them that such as are refused will be so marked, and that such as are neither specifically affirmed nor refused are suf-

ficiently covered by the general charge: and there is no error in declining to specifically affirm or refuse the points actually covered by the general charge.

2. RAILROAD COMPANIES — ACCIDENT AT CROSSING — COLLISION WITH TROLLEY CAR.

In an action by a passenger on a trolley car, who was injured by collision thereof with a railroad car, against the railroad company, where the complaint is founded upon alleged negligence of defendant's servants, it is proper to refuse requested instructions absolving the railroad company from responsibility, if it appeared that the trolley-car company had failed to comply with the provisions of a contract between it and the railroad company whereby it agreed to stop each car, and send forward the conductor, before crossing the railroad tracks.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

This was an action by William Friel against the Baltimore & Ohio Railroad Company to recover damages for personal injuries. The case was tried together with two other cases arising out of the same accident, and which were brought against the Baltimore & Ohio Railroad Company, by William Friel and Susan Friel, his wife; and by Lilly Friel, by her father and next friend, William Friel. In the court below there was a verdict for plaintiff, and judgment accordingly, to review which the defendant sued out this writ of error.

The plaintiff's statement of his cause of action, omitting the formal allegations, was in the following language:

"Third. That the said Baltimore & Ohio Railroad Company operates sundry lines of railroad within the Eastern district of the state of Pennsylvania, known as the 'Philadelphia Division of the Baltimore & Ohio Railroad Company,' and in particular a branch thereof known as the 'Crum Creek Branch,' which extends from Fairview, Pennsylvania, to Leipers, Pennsylvania, a distance of about two and one-half miles. Fourth. That on the 14th day of August, 1895, the plaintiff was a passenger on a trolley car running upon the Chester and Darby turnpike, which turnpike crosses at grade said Crum Creek Branch of the road of the corporation defendant. That while said plaintiff was in said trolley car in the act of crossing the tracks of said Crum Creek Branch, the defendant, by its servants, negligently caused a freight car to be shunted across the trolley track, whereby a collision between said freight car and said trolley car ensued, and the plaintiff received severe bodily injury, being bruised, cut, and shattered, whereby the plaintiff has been caused great loss and damage, bodily pain and suffering, expenses for medicine and physicians, the loss of employment and permanent loss of earning power, to the damage of the plaintiff of $25,000, wherefor the plaintiff brings suit."

At the trial it appeared, among other things, that the defendant, the Baltimore & Ohio Railroad Company, had a contract with the trolley-car company whereby the latter agreed that all of its trolley cars, before crossing the railroad tracks at the place of the collision, should come to a full stop, and that the conductor should go ahead, and see that the tracks were clear, before crossing. Evidence was introduced to show that this agreement was disregarded by the trolley-car company on the occasion of the accident; and among the prayers for instructions presented by defendant were the following, each of which was refused:

"(3) If the jury believe that the electric trolley company who carried the plaintiffs as passengers had at or before the time of construction of its railroad across the defendant's railroad contracted with the defendants to stop every car at this crossing, and send the conductor ahead to see that the crossing was safe and clear, it was the duty of the motorman of the trolley car to stop before reaching the railroad, and look and listen for approaching trains, and the conductor to precede the

car; and if the jury believe from the evidence that they failed to do so, and that such failure was the proximate cause of the accident,—the plaintiff cannot recover in this action, and the verdict must be for the defendant." Answer: "This point is refused."

"(7) The plaintiffs having taken passage for hire in the car of the electric traction company, who were under contract in writing to stop every trolley car at this crossing, and see that the conductor crossed the track ahead of his car, to see that the same was safe for the passage of his car, if the jury find from the evidence that this precaution was not observed by the motorman and conductor of the car upon which the plaintiff was riding, and the accident was caused by this negligence, then it is the duty of the plaintiff to first bring and prosecute his or- her action against the carrier or trolley company for his damages; and in the absence of evidence that this right has been asserted unsuccessfully no action against the defendant can be maintained, and the verdict in this case must be for the defendant." Answer: "This point is refused."

"(10) Under the contract in evidence, governing the common use of· the crossing, it was the duty of the traction company to bring its cars to a full stop short of the crossing, and cause the conductor to go ahead, and see that there was no approaching car on the defendant's railroad, before attempting to cross; and, if the jury believe that the accident resulted solely from the violation of their contract by .the traction company, the said traction company is alone liable to the plaintiffs, and the verdict should be in favor of the defendant." Answer: "This point is refused."

"(13) The defendant having required the traction company to enter into a binding contract not to cross the trolley cars without first stopping and ascertaining if it was safe to cross, there is no further legal duty resting on the defendant to provide a flagman at the crossing to advise the trolley-car operators of the approach of its trains." Answer: "This point is refused."

W. H. Addicks, for plaintiff in error.

Richard E. Dale, for defendant in error.

Before DALLAS, Circuit Judge, and BUTLER and WALES, District Judges.

DALLAS, Circuit Judge. The defendant below (plaintiff in error) presented 17 requests for charge, and the 13 errors alleged all relate to the disposition which was made of them. The learned judge, upon the conclusion of his general charge, which was, admittedly, faultless, said:

"I have been asked by defendant's counsel to answer certain points or prayers for instructions. Such as I affirm I will read to you; such as I refuse I will not read, but simply mark 'Refused'; and such as I neither specifically affirm nor refuse are sufficiently covered by my general charge."

This manner of dealing with the points was unobjectionable and judicious. The jurors might have been bewildered by uselessly reading to them a number of isolated propositions, and the effect of the connected presentation of the case which had been made might have been impaired by adding disjointed explanations in response to the points. The assignment of errors complains of the action of the court—First, in declining to separately answer certain of the points; and, second, in disaffirming certain others of them.

1. The specifications of the first class are overruled, for the reason that, upon examination of the points which they severally recite, we find that their respective subjects-matter had been, as the learned judge. said, already sufficiently covered.

"Perhaps some of the abstract propositions of the defendant's counsel contained in the instructions asked for, based on the facts assumed therein, if such facts were conceded or found in a special verdict, would be technically correct. But

a judge is not bound to charge upon assumed facts in the ipsissima verba of counsel, nor to give categorical answers to a judicial catechism based on such assumption. Such a course would often mislead the jury, instead of enlightening them, and is calculated rather to involve the case in the meshes of technicality than to promote the ends of law and justice. It belongs to the judicial office to exercise discretion as to the style and form in which to expound the law and comment upon the facts. If a judge states the law incorrectly, or refuse to state it at all, on a point material to the issue, the party aggrieved will be entitled to a new trial. But when he explains the whole law applicable to the case in hand,—as we think was done in this case,—he cannot be called upon to express it in the categorical form, based upon assumed facts, which counsel choose to present to him." Continental Co. v. Stead, 95 U. S. 161.

2. The first request—for binding instructions—was, beyond question, properly denied. The other points which were refused all relate to a certain agreement in writing between the defendant company and the trolley company in whose car the plaintiff was a passenger when he received, in consequence of the collision of a train of the defendant with that car, the injury which was the basis of the action. The accident occurred at a grade crossing, the construction and care of which was the subject of the agreement referred to. By that agreement the trolley company, as between itself and the railroad company, assumed certain obligations of care, which, in this instance, were not fulfilled, and which, it appears, were habitually disregarded. But it is a mistake to suppose that this contract between the two companies should have been regarded as controlling. The plaintiff's action was not founded upon it, but upon the negligent conduct of the defendant's servants, and to him it was responsible if their omission of due care, though in combination with a breach of contract by the trolley company, caused his injury. The true question, we repeat, was as to the fact of negligence by the defendant, and as to the decisive agency of such negligence in producing the hurt to the plaintiff. This issue was for determination, not by the terms of an agreement to which the plaintiff was not a party, but upon all the evidence in the cause; and as it was so submitted to the jury, with instructions in which there was no error, the judgment is affirmed.