## ST. LOUIS, I. M. & S. RY. CO. v. EDWARDS.

(Circuit Court of Appeals, Eighth Circuit. January 25, 1897.)

### No. 759.

1. OPINION EVIDENCE—DAMAGE TO CATTLE BY CARRIER'S DELAY.

Upon the question of the amount of damages to a number of cattle, caused by the negligent delay of a carrier in delivering them, a witness, who is familiar with the handling and transportation of cattle and with their market value, and has attended the cattle in question during their transportation, may give his opinion as to the amount of damage sustained by them in consequence of the detention, and as to the difference in their value between the condition in which they arrived at their destination and that in which they would have arrived if there had been no delay.

2. CARRIERS—DAMAGE TO CATTLE—DELAY OF CONNECTING CARRIER.

Where a carrier had undertaken to transport goods of a shipper from one point to another, the fact that a delay in their delivery was caused by the fault of another carrier, who has no contractual relation with the shipper, but who had contracted with the first carrier to carry the goods a part of the distance, is no defense to an action against the first carrier for damages for the delay.

In Error to the Circuit Court of the United States for the Eastern District of Arkansas.

This action was brought in the circuit court of the United States for the Eastern district of Arkansas by J. L. Edwards, the defendant in error, against the St. Louis, Iron Mountain & Southern Railway Company, the plaintiff in error, to recover damages for negligently delaying the transportation of 847 head of cattle over the defendant's road. The plaintiff in the action recovered judgment in the lower court, and the defendant sued out this writ of error. The cattle were detained in the defendant's cars 12 or 15 hours in excess of the limit allowed by the act of congress, during the most of which time the cars were standing still. To prove the damage sustained by the cattle by reason of their long and negligent detention in the cars, the plaintiff called a witness, who was shown to have been extensively engaged for many years in buying, selling, and feeding cattle, and in shipping them by rail and attending them in transit, and who attended the shipment of the cattle in controversy, and was familiar with their market value, and the effect upon them of their long detention in the cars, and propounded to him the following questions: "Q. From your observation of these cattle at that time, and your knowledge of cattle, can you state what damage they had sustained? A. My judgment is, they sustained a damage of three dollars a head. Q. Doctor, state, if you can, what the difference in the value of these cattle was per head between the condition in which they arrived as you saw them, and the condition in which they would have arrived had they gone in on proper time, and with proper transportation. A. Three dollars a head." The defendant made timely objections to each of these questions upon the ground that "it was incompetent and improper, and for the further reason that it called for an opinion as to the value, which was wholly within the province of the jury"; and it also objected to the answers to each of the questions because "it was incompetent and improper, and for the further reason that it was an opinion as to value, which was wholly within the province of the jury." The court overruled these objections, to which ruling of the court the defendant duly excepted, and has assigned the same for error.

Geo. E. Dodge, B. S. Johnson, and J. E. Williams, for plaintiff in error.

T. E. Webber, for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The objection to the testimony was, not that the witness was not qualified to give an opinion as to the damage to the cattle, but it was that the question "called for an opinion as to values, which was wholly within the province of the jury." The general rule undoubtedly is that witnesses are to testify to facts, and not to give their opinions; but this rule has its exceptions as familiar and well settled as the rule itself. The exceptions rest upon the common ground of necessity. Among these exceptions is this one: That a witness, having special knowledge and experience as to the value of property animate or inanimate, and as to how the value of such property is affected by certain conditions or treatment, may give his opinion as to how much the property was damaged or benefited by such conditions or treatment. In many cases witnesses are allowed to testify to their opinions, not because they are experts in the technical sense of that term, but because they have special knowledge of the particular facts in the case, which the jurors have not. It is manifest that one who has never handled or shipped cattle by rail, and has never looked after and attended them while in the cars en route to their destination, can have no accurate conception of the effect upon cattle of confining them in cars standing still on the track for 10 or more hours at the end of a long journey. It does not accord with reason or experience to say that a jury composed of merchants, bankers, tailors, shoemakers, or others, who know absolutely nothing about raising or shipping cattle, or the effect upon them of detaining them for an unreasonable length of time in cars standing still on the track, are as capable of estimating the effect of such detention as an experienced cattle man, who has been engaged in handling and shipping cattle by the thousands for almost the space of a human life, and who was present with the cattle, attending to them, during their transportation. It is no answer to this to say that perchance there might be on the jury a farmer or cattle man who had had some experience in handling and shipping cattle, for it is a rule that a juryman cannot testify, in the jury room, to his fellows about facts within his personal knowledge, and, if he does, the verdict will be set aside. Nor is it any answer to say that the witness can tell the jury how long the cattle were in the cars, or how they looked and acted, and that from that imperfect information the jury may arrive at a correct conclusion as to the damage. The poverty of the English language makes it absolutely impossible for a witness to present to the minds of the jurors the appearance of cattle, and what that appearance denotes, as it is presented to his practiced and experienced eyes. The experience of the witness and the appearance of the cattle cannot be photographed on the minds of the jurors. The knowledge of the con-

dition of these cattle, and how that condition affected their value, must of necessity have existed in the mind of the witness who had had such a large and extended experience in shipping cattle with far greater clearness and certainty than it could have been communicated to the minds of the jurors by any statement he might have made of what he saw merely, however clear and lucid such statement might have been. It is obvious that, if witnesses were to be permitted to state to a jury those facts only of which they have absolute knowledge, not only the range of inquiry, but the province of remedial justice, would be very materially contracted. Gulf, C. & S. F. Ry. Co. v. Washington, 4 U. S. App. 121, 1 C. C. A. 286, 49 Fed. 347; Harpending v. Shoemaker, 37 Barb. 270. It is clear upon principle and authority that the objections to the questions and answers were rightly overruled.

In Clifford v. Richardson, 18 Vt. 626, the court said:

"The facts are sometimes incapable of being presented with their proper force and significance to any but the observer himself, and it often happens that the triers are not qualified, from experience in the ordinary affairs of life, duly to appreciate all the material facts when proved. Under these circumstances the opinions of witnesses must, of necessity, be received."

In Shattuck v. Railroad Co., 6 Allen, 115, the supreme judicial court of Massachusetts said:

"It is settled in this commonwealth that where the value of property, real or personal, is in controversy, persons acquainted with it may state their opinion as to its value; also where the amount of damage done to property is in controversy such persons may state their opinion as to the amount of the damage. This is permitted as an exception to the general rule, and not strictly on the ground that such persons are experts; for such an application of that term would greatly extend its signification. The persons who testify are not supposed to have science or skill superior to that of the jurors; they have merely a knowledge of the particular facts in the case which the jurors have not. And as value rests merely in opinion, this exception to the general rule that witnesses must be confined to facts, and cannot give opinions, is founded in necessity and obvious propriety. Walker v. Boston, 8 Cush. 279; Dwight v. Commissioners, 11 Cush. 201; Vandine v. Burpee, 13 Metc. (Mass.) 288; Wyman v. Railroad Co., Id. 326; Clark v. Baird, 9 N. Y. 183."

And in a later case in the same court (Swan v. Middlesex Co., 101 Mass. 173, 178), the court, speaking by Judge Gray, now Mr. Justice Gray of the supreme court of the United States, said:

"The only objections taken at the trial, so far as they applied to each of the witnesses, were to the admission of the question 'what, in his opinion, would be the effect upon the value of the estate in question, of widening the street and cutting off the land and trees,' and to the answer to this question given on direct examination. The grounds assigned for these objections were twofold: because the witnesses were not qualified to answer the question, and because it did not relate to a matter upon which the opinion of any witness would be admissible. Neither of these grounds is tenable. * * * These opinions are admitted, not as being the opinions of experts, strictly so called, for they are not founded on special study or training or professional experience; but rather from necessity, upon the ground that they depend upon knowledge which any one may acquire, but which the jury may not have; and that they are the most satisfactory, and often the only obtainable, evidence of the fact to be proved. Dwight v. Commissioners, 11 Cush. 203; Shattuck v. Railroad Co., 6 Allen, 116, 117; Whitman v. Railroad Co., 7 Allen, 316, and cases there cited. The same rule has prevailed in courts of authority in other states. Kellogg v. Krauser, 14 Serg. & R. 137; Warren v. Wheeler, 21 Me. 484; Clark v. Baird, 9 N. Y. 183."

In Polk v. Coffin, 9 Cal. 56, the action was to recover damages to cattle by falling through the defendant's wharf, and the assignment of error was exactly the same that it is in this case. It was, as stated by counsel for the plaintiff in error, that:

"The court allowed the plaintiff Polk to prove by his witness John Hensley his opinion of the damage, in money, done to the cattle, as the mode of ascertaining the amount of damage sustained by such plaintiff. To this mode of proving damages the defendants' counsel objected. The objection was overruled, and defendants excepted. There is nothing in the case showing that this witness was competent to determine the amount of damages; this was the province of the jury upon evidence of facts."

This is precisely the contention of the plaintiff in error in this case. After referring to all the points made by the plaintiff in error, the court said:

"We do not think any of the points well taken. The witness Hensley testified that his business was that of a stock raiser, and, therefore, he was capable of forming an accurate judgment as to the actual injury sustained by the stock, and the consequent depreciation of their value."

In Railroad Co. v. Thompson, 10 Md. 76, 85, the court said:

"On questions of science, skill, or trade, or other of the like kind, persons of skill may testify not only to facts, but are permitted to give their opinions in evidence. 1 Greenl. Ev. § 440. And so accordingly it has been held that 'persons accustomed to observe the habits of fish have been permitted to give in evidence their opinions as to the ability of the fish to overcome certain obstructions in the rivers which they were accustomed to ascend.' Id. If this be so, we see no reason why one who is familiar, from long observation, with the habits of cattle, shall not be permitted to give his opinion as to the probable influence of certain causes on their condition. In this record it appears from the testimony of Baker, that 'an experienced grazier can tell by the look of cattle whether they have been frightened and scared or disturbed in the pasture.' "

In a criminal prosecution for maliciously injuring a mule by inflicting a cut upon it, it was material under the statute to prove "the amount of the injury done" to the mule, and witnesses were permitted to give their opinions as to the amount the mule was damaged, and the court said:

"We think the court below committed no error in permitting the state to prove that the damage or injury done to the mule was fifty dollars. Considering this evidence in connection with the evidence which precedes it, we understand it to amount to nothing more than the expression of the opinion of the witnesses that the value of the mule was diminished fifty dollars by the injury done to it. It is but a comparison of the value before and after the injury, and such a comparison it was certainly competent for the witness to make." Johnson v. State, 37 Ala. 457.

In the case of Railroad Co. v. Woosley, 85 Ill. 370, 373, the court said:

"Objection is also urged that witnesses were allowed to give their opinions of the amount of damages sustained. The witnesses first stated that they had personal knowledge of the alleged injuries on which the claim for damages is based, and detailed their character. It was then competent to receive their opinions as to the amount of the damages sustained. Cooper v. Randall, 59 Ill. 317; Railroad Co. v. Henry, 79 Ill. 290."

In Railroad Co. v. Haslam, 73 Ill. 494, 497, the court said:

"Witnesses were allowed to give their opinions as to the damages sustained by the several claimants by reason of the construction of the railroad, notwithstand-

ing the objection of appellant. This practice is warranted by the rule stated in Coke Co. v. Graham, 35 Ill. 346. It is one mode of arriving at the true measure of damages, and, when the witness possesses peculiar knowledge of the facts, it is often valuable evidence. The rule has its foundation in obvious necessity. It is sometimes very difficult to convey to the mind of the jury an accurate idea of the location of the premises, and exactly how they may be affected by the contemplated improvements. This difficulty has given rise to an exception to the general rule that the witness must be confined to a detailed statement of facts. In such cases his opinion as to the damage sustained is admissible, and is to be considered in connection with the other evidence in the case."

In Railway Co. v. Warren, 137 U. S. 348, 11 Sup. Ct. 96, exceptions had been taken at the trial to receiving the opinions of witnesses as to the value of the property in controversy. Mr. Justice Brewer, speaking for the court, said:

"It is not questioned by the counsel for plaintiff in error that the general rule is that value may be proved by the opinion of any witness who possesses sufficient knowledge on the subject, but their contention is that the witness permitted to testify had no such sufficient knowledge. * * * After a witness has testified that he knows the property, and its value, he may be called upon to state such value. The means and extent of his information, and therefore the worth of his opinion, may be developed at length on cross-examination. And it is fully open to the adverse party, if not satisfied with the values thus given, to call witnesses in the extent of whose knowledge and the weight of whose opinions it has confidence."

"But when," says Dr. Wharton, "as is often the case, these facts can be best expressed by the damage they caused, then this damage and its extent may be testified to by the witness." 1 Whart. Ev. (3d Ed.) § 450. Judge Sutherland, in his valuable treatise on Damages, after reviewing the authorities, says:

"There is a growing tendency to the doctrine, if it be not already established, that opinions of ordinary witnesses may be given upon matters of which they have personal knowledge in all cases in which, from the very nature of the subject, the facts disconnected from such opinions cannot be presented to a jury so as to enable them to pass upon the question with the requisite knowledge." Suth. Dam. § 442.

The defendant set up as a defense that the detention of the cattle in the cars was occasioned by the delay in transferring the cars containing them across the Mississippi river from West Memphis to Memphis, and that the inclines and transfer boats used for that purpose were not "its property, nor in its control or possession," but belonged to another corporation, namely, the Kansas City, Ft. Scott & Memphis Railroad Company, "whose duty it was to transfer the same." There were no contractual relations between the plaintiff and the last-named company. The defendant had contracted to carry the plaintiff's cattle to Memphis. It was no concern of the plaintiff what cars, bridges, inclines, or boats the defendant used, or expected to use, for this purpose. If, as alleged in the answer, it was the duty of the Kansas City, Ft. Scott & Memphis Railroad Company to transfer the defendant's cars from West Memphis to Memphis, it was a duty it owed to the defendant and for a breach of which it is liable to the defendant; but clearly, for the purpose of determining the rights and liabilities of the plaintiff and defendant in this action, the Kansas City, Ft. Scott & Memphis Railroad Company, upon the evidence, must be regarded as the defendant's agent for the pur-

pose of transferring its cars. Railroad Co. v. Friel, 23 C. C. A. 77, 77 Fed. 126. Moreover, the contract between the defendant and the Kansas City, Ft. Scott & Memphis Railroad Company relating to the transfer of cars from West Memphis to Memphis contains the stipulation that "loss and damage to cars and their contents, whether passenger or freight, shall be borne by the company for which the car or cars are being transferred."

Other errors are assigned, but, as none of them is of any general importance, a separate consideration of them is unnecessary. They have all been carefully considered, and found to be without merit. The judgment of the circuit court is affirmed.