RICHMOND COAL CO. v. COMMERCIAL UNION ASSUR. CO., LIMITED, OF LONDON, ENGLAND.

(Circuit Court of Appeals, Ninth Circuit. May 10, 1909.)

No. 1,622.

INSURANCE (§ 669*)—FIRES—PROXIMATE CAUSE—ACTION—INSTRUCTIONS.

A fire policy exempted against loss caused directly or indirectly by earthquake, or when the property is endangered by fire in neighboring premises, or unless fire ensues, and in that event for the damage by fire only or by explosion of any kind. Plaintiff's property was destroyed by fire following the San Francisco earthquake, and the court charged that if the earthquake directly or indirectly caused the fire in one of several specified places in the city, and any one or more of such fires so caused spread by flame, spark, or heat and burned uninterruptedly from building to building or from block to block until any one or more of them reached and destroyed plaintiff's property, then the jury should find for defendant, their determination being limited to the origin of the fires by which plaintiff's property was destroyed, and if the fires by which it was destroyed, no matter at what point or from where they started, were caused by the earthquake, plaintiff could not recover. The court also charged that if the fire originating on premises named ensued on an explosion, and such fire destroyed plaintiff's property, then plaintiff was entitled to recover, unless plaintiff's property was destroyed directly or indirectly by the earthquake; but if the earthquake was the proximate and efficient cause of the fire, defendant would not be liable, though the means by which the earthquake caused the fire was an explosion. *Held* erroneous as eliminating the question whether the fires which were started by the earthquake extended "at once" to the insured property, and whether there were new and intervening causes between fires and the burning of the property, such as explosion, back-fire, dynamiting, and the course or force of the wind.

[Ed. Note.—For other cases, see Insurance, Dec. Dig. § 669.*]

Gilbert, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of California.

For opinion below, see 159 Fed. 985.

E. B. Young and L. A. Redman, for plaintiff in error.

T. C. Van Ness, for defendant in error.

Alfred Sutro, amicus curiæ.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This action was brought by the plaintiff in error against the defendant in error upon a policy of fire insurance issued by the defendant insuring the plaintiff against all direct loss or damage by fire on certain coal stored on the premises situated at the northwest corner of Howard and Spear streets, in the city of San Francisco, the policy, however, containing the provision that the insurance company—

"shall not be liable for loss caused directly or indirectly by invasion, earthquake, insurrection, riot, civil war or commotion, or military or usurped power, or by order of any civil authority; or by theft; or by neglect of the insured to use all reasonable means to save and preserve the property at and after a fire, or when the property is endangered by fire in neighboring prem-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date; & Rep'r Indexes

ises; or (unless fire ensues, and, in that event, for the damage by fire only,) by explosion of any kind, or lightning, but liability for direct damage by lightning may be assumed by specific agreement hereon."

The trial resulted in a verdict for the insurance company.

No question is made upon the evidence, the case being brought here upon objections of the plaintiff to the instructions given the jury, which are, in part, as follows:

"The defendant has admitted that the plaintiff's loss resulted directly or immediately from fire, the peril insured against; but it contends that the proximate or efficient cause of the loss was earthquake, notwithstanding the insured property was burned. Upon this issue I instruct you that if you find from the evidence that the loss was proximately, either directly or indirectly, caused by earthquake, your verdict, notwithstanding the insured property was destroyed by fire, should be in favor of the defendant; but if, upon the other hand, you find from the evidence that fire and not earthquake was the proximate or efficient, as well as the direct, cause of the loss, your verdict should be for the plaintiff. By proximate cause is meant a cause which naturally, by continuous sequence, unbroken by a new cause, produces a result; the proximate cause of an effect is not necessarily the cause which is nearest to—that is, immediately or directly produces—the effect; but it is the efficient dominant factor in the production or bringing about of the effect. The nearest or immediate cause of an effect may be merely an instrument of the dominant or efficient cause. * * * The law does not inquire into the cause of a proximate cause. When the proximate cause of an effect has been ascertained, the law ceases to make further inquiry, and ascribes the result exclusively to such cause. While the proximate cause of an effect frequently is, and generally may be, the nearest cause, yet mere distance in time or space is not the exclusive factor in the determination of the question whether or not a given cause is proximate or remote. Other elements are involved, any one of which may be of such a character as to subordinate the element of distance. The proximate cause of an effect is the cause to which the effect is attributed by the rational judgment of mankind. Your inquiry, therefore, in this case should be whether or not the earthquake of April 18, 1906, was the predominating and operating cause of the fire which burned the property of the Richmond Coal Company. The question is, not what cause was nearest in time or place, but what was the cause which set the other causes, if any there be, in operation? The causes, if any there be, which were merely incidents or instruments of a superior or controlling agency, are not the responsible ones, though they may be nearer in time and place, and, if you believe from all the evidence in this case that the earthquake caused the fire which spread to and burned the property of the plaintiff, it will be your duty to render a verdict in favor of the defendant insurance company and against the plaintiff coal company, no matter how many buildings or blocks such fire may have burned through or consumed before it reached the plaintiff's property. * * * If you find and believe from the evidence in this case that the earthquake of April 18, 1906, caused, directly or indirectly, in the city and county of San Francisco, a fire in the vicinity of Fourth and Natoma streets; or a fire in the vicinity of Third and Minna streets; or a fire in the vicinity of Third and Howard streets; or a fire in the vicinity of First and Mission streets; or a fire in the vicinity of Market and Fremont streets, in what has been testified to as Mack & Company's drug store; or a fire on Fremont street, between Howard and Mission streets, in what was known as the Martel Power Company's plant; or a fire at No. 117 Steuart street, in the place known as 'Alice's'; or a fire at No. 48 Steuart street, between Market and Mission streets, in what was known as 'Brown's Store'; and that those fires, or any one or more of them so caused, spread by flame, spark, or heat, and burned uninterruptedly from building to building, or block to block, until they, or any one or more of them, reached and destroyed plaintiff's property located and situated on the northwest corner of Howard and Spear streets—then I charge you that it is your duty, and you must be governed by what the evidence shows, to return a verdict in favor of the

defendant insurance company and against the plaintiff coal company. * * *
The single thing for your determination in this case, without regard to either
of the parties, is the origin of the fires by which plaintiff's property was
destroyed. If the evidence has established that the fires by which plaintiff's
property was destroyed, no matter at what point, or from where they started,
were caused by the earthquake of April 18, 1906, you must, without hesitation,
render your verdict in favor of the defendant insurance company."

The question in the case being whether the earthquake was the
proximate cause of the loss sued for, is it true, as matter of law, that,
if the earthquake started the great fire which followed it, it necessa-
rily constituted the proximate cause of the loss in the burning of every
building or other thing to which such fires spread, without regard to
the time elapsing between such starting of the original fires and the
time of the burning of the particular building or thing in question, or
its distance from the places where such starting of the fires occurred?
It is a matter of common knowledge that the major portion of a great
city cannot be destroyed, even by fire, in a single day, and that, in the
nature of things, in an effort to stop such a great conflagration as that
which destroyed almost all of the business section and much of the
residence portion of San Francisco, there will be intervening events,
such as explosions, back-firing, and dynamiting, and that the course of
the flames may be changed by windstorms and other natural causes.
The instructions complained of take no note of any of those things.

The case of Insurance Company v. Tweed, 7 Wall. 44, 19 L. Ed. 65,
was based upon a policy of insurance by which certain cotton in a ware-
house was insured against fire, the policy containing an exception
against fire which might happen "by means of any invasion, insurrec-
tion, riot or civil commotion, or any military or usurped power, explo-
sion, earthquake, or hurricane." In that case the Supreme Court said:

"The only question to be decided in the case is, whether the fire which de-
stroyed plaintiff's cotton happened or took place by means of the explosion;
for, if it did, the defendant is not liable by the express terms of the contract.
That the explosion was in some sense the cause of the fire is not denied, but
it is claimed that its relation was too remote to bring the case within the
exception of the policy. And we have had cited to us a general review of
the doctrine of proximate and remote causes as it has arisen and been decided
in the courts in a great variety of cases. It would be an unprofitable labor
to enter into an examination of these cases. If we could deduce from them
the best possible expression of the rule, it would remain after all to decide
each case largely upon the special facts belonging to it, and often upon the
very nicest discriminations. One of the most valuable of the criteria furnish-
ed us by these authorities is to ascertain whether any new cause has inter-
vened between the fact accomplished and the alleged cause. If a new force
or power has intervened of itself sufficient to stand as the cause of the mis-
fortune, the other must be considered as too remote. In the present case we
think there is no such new cause. The explosion undoubtedly produced or
set in operation the fire which burned the plaintiff's cotton. The fact that it
was carried to the cotton by first burning another building supplies no new
force or power which caused the burning. Nor can the accidental circum-
stance that the wind was blowing in a direction to favor the progress of
the fire towards the warehouse be considered a new cause. That may have
been the usual course of the breeze in that neighborhood. Its force may have
been trifling. Its influence in producing the fire in the Alabama warehouse
was too slight to be substituted for the explosion as the cause of the fire."

The explosion in that case, as stated by the same court in the sub-
sequent case of Scheffer v. Railroad Company, 105 U. S. 249, 251, 26

L. Ed. 1070, "took place in the Marshall warehouse, which threw down the walls of the Alabama warehouse—the one insured, situated across the street from the Marshall warehouse—and by this means, and by the sparks from the Eagle Mill, also fired by the explosion, facilitated by the direction of the wind, the Alabama warehouse was burned." Yet the Supreme Court held, in Scheffer v. Railroad Company, that the Tweed Case "went to the verge of the sound doctrine in holding the explosion to be the proximate cause of the loss of the Alabama warehouse." And it did so, the court said, because the fire extended at once from the Marshall warehouse, where the explosion occurred, and because no new or intervening cause appeared.

In the case of Milwaukee & St. Paul Railway Company v. Kellogg, 94 U. S. 469, 24 L. Ed. 256, the sparks from a steam ferryboat had, through the negligence of its owner, the defendant, set fire to an elevator, and the sparks from the elevator had set fire to plaintiff's sawmill and lumber yard, which were from three to four hundred feet from the elevator. The court was requested to charge the jury that the injury sustained by the plaintiff was too remote from the negligence to afford a ground for a recovery. Instead of this, the court submitted to the jury to find—

"whether the burning of the mill and lumber was the result naturally and reasonably to be expected from the burning of the elevator; whether it was a result which, under the circumstances, would naturally follow from the burning of the elevator; and whether it was the result of the continued effect of the sparks from the steamboat, without the aid of other causes not reasonably to be expected."

The Supreme Court affirmed that ruling, and, in commenting on the difficulty of ascertaining in each case the line between the proximate and the remote causes of a wrong for which a remedy is sought, said:

"It is admitted that the rule is difficult of application. But it is generally held that, in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

In the case of Insurance Co. v. Boon, 95 U. S. 117, 24 L. Ed. 395, the action was to recover upon an insurance policy upon goods, wares, and merchandise destroyed by fire in October, 1864, in a store at the city of Glasgow, Mo. The policy contained the following exceptions:

"It is hereby declared that the company shall not be liable to make good any loss or damage by fire which may happen or take place by means of any invasion, insurrection, riot or civil commotion, or of any military or usurped power."

The policy had reference to conditions prevailing in Missouri during the Civil War. The city of Glasgow was attacked on the 15th of October, 1864, by an armed force of Confederates, under military organization, who surrounded and attacked the city. It was defended by the Union forces, but when it became apparent that the city could not be successfully defended, in order to prevent the military stores deposited in the city hall from falling into the possession of the Confederate forces, the city hall was set on fire, and it, with its contents,

was destroyed. Without other interference, agency, or instrumentality, the fire spread to the building next adjacent to the city hall, and from building to building through two other intermediate buildings to the store containing the goods insured, and destroyed them. During the time and until the fire had consumed such goods, the battle between the contending forces continued, and no surrender had taken place, nor had any of the Confederate forces entered the city. The court, referring to the law applicable to such a case, said:

"The conclusion is inevitable that the fire which caused the destruction of plaintiff's property happened or took place, not merely in consequence of, but by means of, the rebel invasion and military or usurped power. The fire occurred while the attack was in progress, and when it was about being successful. The attack, as a cause, never ceased to operate until the loss was complete. It was the causa causans which set in operation every agency that contributed to the destruction."

And, in referring to the case of Milwaukee Railway Co. v. Kellogg, supra, the court said:

"The inquiry must always be whether there was any intermediate cause disconnected from the primary fault, and self-operating, which produced the injury."

The court held that, by reason of the events being so linked together as to form one continuous whole, the fire was excepted from the risks undertaken by the insurers.

In the case of The G. R. Booth, 171 U. S. 450, 19 Sup. Ct. 9, 43 L. Ed. 234, these facts appeared: The steamship G. R. Booth was discharging her cargo at a dock in New York; part of it consisted of a number of cases of detonators. While she was being unladen, one of the cases exploded, making a large hole in the side of the ship, in the No. 4 hold, in consequence of which sea water rapidly entered the No. 4 hold and passed through into No. 3 hold, where there was a cargo of sugar belonging to the libelant, damaging the sugar. The bill of lading contained a proviso that:

"The ship or carrier shall not be liable for loss or damage occasioned by the perils of the sea or other waters * * * by collision, stranding or other accidents of navigation, of whatsoever kind."

In the District Court the libel of the owner of the sugar was dismissed. The Circuit Court of Appeals certified the facts to the Supreme Court, and asked for instructions upon the following question:

"Whether the damage to libelant's sugar caused by the sea water which entered the ship through the hole made in her side by the explosion, without her fault, is a 'loss or damage occasioned by the perils of the sea or other waters,' or by an 'accident of navigation of whatsoever kind,' within the above-mentioned exceptions in the bill of lading."

The Supreme Court answered the question in the negative, saying in the course of its opinion:

"In the case at bar, the explosion of the case of detonators, besides doing other damage, burst open the side of the ship below the water line, and the sea water rapidly flowed in through the opening made by the explosion, and injured the plaintiff's sugar. The explosion, in consequence of which, and through the hole made by which, the water immediately entered the ship, must be considered as the predominant, the efficient, the proximate, the responsible cause of the damage to the sugar, according to each of the tests

laid down in the judgments of this court, above referred to. The damage to the sugar was an effect which proceeded inevitably, and of absolute necessity, from the explosion, and must therefore be ascribed to that cause. The explosion concurred, as the efficient agent, with the water, at the instant when the water entered the ship. The inflow of the water, seeking a level by the mere force of gravitation, was not a new and independent cause, but was a necessary and instantaneous result and effect of the bursting open of the ship's side by the explosion. There being two concurrent causes of the damage —the explosion of the detonators, and the inflow of the water—without any appreciable interval of time, or any possibility of distinguishing the amount of damage done by each, the explosion, as the cause which set the water in motion, and gave it its efficiency for harm at the time of the disaster, must be regarded as the predominant cause. It was the primary and efficient cause, the one that necessarily set the force of the water in operation; it was the superior or controlling agency, of which the water was the incident or instrument. The inflow of the sea water was not an intermediate cause, disconnected from the primary cause, and self-operating; it was not a new and independent cause of damage; but, on the contrary, it was an incident, a necessary incident and consequence, of the explosion; and it was one of a continuous chain of events brought into being by the explosion—events so linked together as to form one continuous whole."

In the light of these decisions of the Supreme Court, we think the court below went much too far in instructing the jury, as it specifically did, that if they should find and believe from the evidence—

"that the earthquake of April 18, 1906, caused, directly or indirectly, in the city and county of San Francisco, a fire in the vicinity of Fourth and Natoma streets; or a fire in the vicinity of Third and Minna streets; or a fire in the vicinity of Third and Howard streets; or a fire in the vicinity of First and Mission streets; or a fire in the vicinity of Market and Fremont streets, in what has been testified to as Mack & Company's drug store; or a fire on Fremont street, between Howard and Mission streets, in what was known as the Martel Power Company's plant; or a fire at No. 117 Steuart street, in the place known as 'Alice's'; or a fire at No. 48 Steuart street, between Market and Mission streets, in what was known as 'Brown's Store'; and that those fires, or any one or more of them so caused, spread by flame, spark, or heat, and burned uninterruptedly from building to building, or block to block, until they, or any one or more of them, reached and destroyed plaintiff's property located and situated on the northwest corner of Howard and Spear streets—then I charge you that it is your duty, and you must be governed by what the evidence shows, to return a verdict in favor of the defendant insurance company and against the plaintiff coal company. * * * The single thing for your determination in this case, without regard to either of the parties, is the origin of the fires by which plaintiff's property was destroyed. If the evidence has established that the fires by which plaintiff's property was destroyed, no matter at what point, or from where they started, were caused by the earthquake of April 18, 1906, you must, without hesitation, render your verdict in favor of the defendant insurance company."

The contract of insurance here involved has a further important provision. In enumerating excepted losses, it is provided that the insurance company shall not be liable for losses caused by explosion *of any kind,* unless fire ensue, and, in that event, for the damage by fire only. Fire was the peril insured against, but when there was an explosion, the company, wishing to limit its liability to the damage by fire and exclude damage by the explosion, provided for a loss by explosion of any kind, providing a fire ensued, and then for the damage by the fire only. Where it has been ascertained that the proximate cause of a fire has been an explosion, the inquiry must stop there; it cannot go further and inquire as to the proximate cause of the proxi-

mate cause, for, as said by the Supreme Court in Scheffer v. Railroad Co., supra, "such a course of possible or even logical argument would lead back to that 'great first cause least understood' in which the train of all causation ends."

Notwithstanding this clear limitation of the inquiry, the court below instructed the jury as follows:

"On this subject I instruct you that if you find that the fire originating on those premises ensued upon an explosion or explosions of any kind, and you also find that the fire was the one that destroyed the plaintiff's insured property, then your verdict should be for the plaintiff, unless you find that the destruction of such property was directly or indirectly caused by earthquake. If, as I have already explained to you, the earthquake was the proximate, efficient cause of the fire, the defendant will not be liable, even though the means by which the earthquake caused such fire was an explosion."

As a matter of course, the earthquake did not, and could not have, directly set the coal on fire. At most it created conditions from which fires were or may have started, possibly by the crossing of wires, or the upsetting of lamps or stoves, in various places in the city more or less remote from the insured coal. Under the specific instructions referred to, the jury, in determining whether the earthquake was the proximate or remote cause of the fire that injured the subject of the action, could not be controlled by, nor, indeed, give any consideration to, the circumstances whether or not any of the fires that were started, or may have been started, by the earthquake, extended "at once" to the insured property, as in the Tweed Case, or within any period of time which would serve as a reasonable connection between them, nor as to whether there were any new or intervening causes between the fires that were started or may have been started by the earthquake, and that which caused the loss sued for, such as explosion, back-firing, dynamiting, the course or force of the winds, if any such occurred, nor, in short, any of the "attending circumstances" referred to by the Supreme Court in the cases hereinbefore mentioned—all of which, in our opinion, were proper matters for the consideration of the jury in determining whether fire or fires started by the earthquake were the proximate cause of the damage to the insured coal.

For the reasons stated, the judgment is reversed, and the cause remanded to the court below for a new trial.

GILBERT, Circuit Judge (dissenting). In my opinion, the instructions which were given to the jury and to which exceptions were taken present a clear, logical, and correct exposition of the law upon the issues in the case. Each sentence and each proposition contained in it will stand the test of the most critical scrutiny. Indeed, I do not understand that the majority of this court hold otherwise. The error in the instructions which in their opinion requires the reversal of the judgment does not consist in the things that were said, but in the things that were left unsaid. It is held that the instructions were fatally defective for the reason that the court omitted to give consideration to the question whether or not the fires which were started by the earthquake extended "at once" to the insured property, and to the question whether there were new and intervening causes between those

fires and the burning of that property, such as explosion, back-firing, dynamiting, and the course or force of the wind.

Considering, first, the suggestion that consideration should have been given to intervening causes, I inquire what should have been said and why should anything have been said on that subject? We have no evidence that any such causes intervened to disturb the causal relation between the fires which were started and the destruction of the insured property. In the Tweed Case the court said that the mere accidental circumstance that the wind was blowing in a direction to favor the progress of the fire toward the insured warehouse could not be considered a new cause. There is no suggestion anywhere in the record in this case that there was back-firing or dynamiting or that there was a wind. There was no request for an instruction on those subjects, nor was any specific exception taken to the charge for want of such instruction. None of the evidence in the case is before us. In the bill of exceptions it is recited as follows:

"Evidence was then introduced by defendant which was sufficient to justify the verdict in every aspect of the instructions given by the court as herein set forth, and such instructions were in all respects pertinent to the evidence."

When instructions to a jury are challenged in an appellate court, that court is bound to assume, in the absence of evidence to the contrary, that the charge was appropriate to the testimony in the case. This court has so held in accord with the general rule. Yates v. United States, 90 Fed. 57, 32 C. C. A. 507; Southern Pacific Co. v. Arnett, 111 Fed. 849, 50 C. C. A. 17. In Carpenter v. Ewing, 76 Cal. 488, 18 Pac. 432, the Supreme Court of California held that where none of the evidence is brought up in the record, and there is nothing to show its purport or tendency, it will be presumed that it was such as to justify the instructions. The court said:

"The settled rule is that, where the record contains no part of the evidence, the judgment will not be disturbed on account of instructions alleged to be erroneous, unless it appears that such instructions would have been erroneous under every conceivable state of facts."

That doctrine has been reaffirmed in several later decisions of that court. So far, therefore, as our power to deal with these instructions is concerned, the case is precisely the same that it would be if we had before us in a bill of exceptions positive and uncontradicted evidence that there was no explosion and no dynamiting or back-firing between the points where the various fires referred to in the instructions were located and the insured property, and that from the moment when those fires were started until the time when the loss insured against occurred there was no unusual wind and no new intervening cause to affect the uninterrupted continuous progress of the fires. Will it be contended that under such a state of facts the instructions which were given in this case would have been inappropriate?

Again, I inquire why should the court below have taken into consideration the question whether the fires proceeded "at once" toward the insured property? If it is meant that the defendant in error could not avail itself of the exception against liability for loss from fires started by earthquake unless such fires produced immediate destruc-

tion of the insured property, then the plaintiff in error was entitled to a peremptory instruction in its favor, for it is obvious that a fire which proceeded by burning uninterruptedly the intervening blocks in its course could not "at once" burn the insured property. It is true that in the Scheffer Case the court, in referring to the ground of the decision in the Tweed Case, said that explosion had been held to be the proximate cause of the loss because the fire extended "at once" from the warehouse where the explosion occurred, and because there was no new or intervening cause between the explosion and the burning of the insured property, and that, if a new force or power had intervened sufficient to stand of itself as the cause of the misfortune, the other must be considered as too remote. What is there in the present case to show that one or more of the fires which are referred to in the instructions as having been started by earthquake did not proceed at once to burn the intervening property until it reached the insured property, and what evidence is there of the intervention of any new power or force sufficient of itself to stand as the cause of the misfortune? The court below instructed the jury in entire harmony with the doctrine of the Tweed Case as it is explained in the Scheffer Case, and charged them that if they found that the fires were caused by earthquake, "and that such fire or fires thereafter spread to and burned uninterruptedly from building to building, or from block to block, until they reached and destroyed the property insured, that then the insurer was not liable."

In the opinion of the majority of the court attention is directed to a paragraph of the instructions, which is quoted, on the relation of explosion to the question of liability under the policy. The relevancy of that instruction to the assignment of errors which are relied upon here is not apparent, for no exception was taken to it. It is true that error is assigned to the refusal of the court to give a certain instruction requested by the plaintiff in error on the subject of explosion, but in that refusal it would seem that the majority of this court have found no error. In that conclusion, in view of the terms of the policy, I concur.