———o———

A. CLARK, Respondent, vs. ST. LOUIS, KANSAS CITY, AND NORTHERN RAILWAY COMPANY, Appellant.

1. *Common carrier—Action against for failure to deliver stock—Special contract—Common law obligation and liability of carrier—Petition before justice, what sufficient.*—A common carrier cannot, by a special contract relating to the transportation of stock, defeat an action in *tort* for their own delivery, based on his common law obligation to use due diligence in transportation of the same. The liability of defendant in such case does not arise upon contract, but in spite of it. And in such case plaintiff's petition before a justice, stating the delivery of the stock to the carrier, his undertaking to transport and failure to deliver them at their destination, their value and the loss, although irregular, is substantially in the form of an action *ex delicto* founded in *tort*.

2. *Instructions—Evidence, refusal of.*—Instructions abstractly correct, but not founded on the evidence, should be refused.

3. *Action against—Declaration—Carriers—Special contract need not be set out in, when.*—In cases where there is a special contract with the carrier, by which the common law liability is restricted, and the action is in form *ex contractu*, it *seems* that the special contract must be set out in the declaration; but where the action is in *tort* for the breach of a duty or obligation imposed by law, it is unnecessary to notice the special contract, although it may be under seal.

4. *Common carrier—Transportation of stock—Negligence—Burden of proof on owner, when.*—Where the owner contracts to load and unload his stock, and to take charge of them during their transportation, and does in fact do so, the burden of proof, when the company is charged with negligence, for the loss or injury to the stock, is upon the owner.

*Appeal from Jackson County Special Law and Equity Court.*

*W. H. Blodgett*, for Appellant.

I. An action cannot be maintained upon an implied contract, when there is an express contract subsisting between the parties in relation to the subject matter of the action, the express contract between the parties being entirely different in its terms from the contract implied by law. (Ang. Car., §§ 46, 54.)

Where an action is brought against one upon his implied undertaking as a common carrier, and the evidence shows that the defendant did not undertake the transportation of the goods as a common carrier, but as a private carrier, under the terms of a special contract, plaintiff cannot recover. For if the defendant stands in the position of a private carrier for hire, it is right that he should be permitted to make such defense as will exonerate him under his contract as a private carrier. (Merle vs. Hascall, 10 Mo. 409; Christy vs. Price, 7 Mo. 433; Murphy vs. Wilson, 44 Mo. 316; Jones vs. Lauderman, 39 Mo. 290; Harris vs. Han. & St. Joe. R. R., 37 Mo. 307; Davidson vs. Graham, 2 Ohio St. 122; Chambers vs. King, 7 Mo. 517.)

II. Suits commenced before justices of the peace, as well as suits commenced in courts of record, must be founded on the real cause of action existing between the parties. (Wagn. Stat. 850, § 18; Hausberger vs. Pac. R. R. Co., 43 Mo. 196.)

III. "If the owner of the goods in the hands of a private carrier accompanies the goods to take care of them, and is himself

guilty of negligence by which the goods are lost, or if there is as much reason to attribute the loss to the negligence of one party as the other, the carrier is not liable." (Aug. Car. § 57.) Where such are the facts, the burden of proof is not upon the defendant. (Louisville, C. & L. R. R. Co. vs. Hedger, Am. Law Reg. 1875, p. 149.)

*S. P. Twiss*, for Appellant, cited further : Ang. Com. Car. [4 Ed.], §§ 17–45, and notes ; Lake Shore & Mich. South. R. R. vs. Perkins, 25 Mich. 329 ; Cragin vs. The New York Cent. R. R. Co. 51 N. Y., 61 ; Kimball vs. Rutl. & Burl. R. R., 26 Vt. 247 ; Ketchum vs. Am. Mer. Un. Ex. Co., 52 Mo. 390 ; Moriarty vs. Harnden's Ex., 1 Daly, [N. Y.] 227 ; Iron Mt. Bk. of St. L. vs. Murdock, 62 Mo. 70.

*Ballingal & Gwynne*, for Respondent.

I. Plaintiff's cause of action was properly stated in his written complaint filed with the justice of the peace, before whom this cause was originally instituted. It was of such a character as to fully apprise defendant of the nature and purport of plaintiff's claim. This the law holds to be sufficient. (Quinn vs. Stout, 31 Mo. 160 ; Iba vs. Han. & St. Joe. R. R. Co., 45 Mo. 469.)

II. The plaintiff's writ was based upon the "common law" liability of defendant arising from its character as a "common carrier." "Negligence" was the gist of the action, and not the violation of any written stipulation contained in the contract for shipment.

The plaintiff proved that he delivered the hogs in controversy to defendant, that defendant received them for transportation, and that defendant had failed to account for the same. This much was amply sufficient to make out the plaintiff's case. After the introduction of this evidence the burden of proof was upon the defendant to show its exemption from liability on account of either the "act of God, or public enemies," or that it was specially exempted from such liability, by contract with plaintiff. But the plaintiff went further, and proved negligence —wilful negligence—on the part of the defendant, The "com-

mon carrier" may, by contract, exempt himself from liability as an insurer against "accident" or "mistake," but not against even slight negligence. (Levering vs. Union Trans. & Ins. Co., 42 Mo. 88 ; Wolf vs. Am. Ex. Co., 43 Mo. 421 ; Ketchum vs. Am. Merch. Union Ex. Co., 52 Mo. 390 ; Read vs. St. L., K. C. & N. R. R., 60 Mo. 199 ; Michigan Southern & Northern Ind. R. R. Co. vs. Heaton, 37 Ind. 448 ; N. Y. Cent. & H. R. R. R. Co. vs. Lockwood, 17 Wal. [S. C. W. S.] 357.)

The whole record shows that defendant was a "common carrier of live stock" for hire. It agreed to transport plaintiff's property, live stock, for $40.00 per car. By its said agreement and reception of the property, it is estopped from denying the character it voluntarily assumed. This is the general rule of law. (Chouteau vs. Goddin, 39 Mo. 229 ; Garnhart vs. Finney, 40 Mo. 449.)

NAPTON, Judge, delivered the opinion of the court.

The action in this case originated before a justice of the peace, and was for the recovery of damages alleged to have been occasioned by the loss of some hogs shipped on the freight cars of the defendant.

The petition filed with the justice stated that the plaintiff delivered to the defendant, a common carrier, one hundred and two hogs, which the defendant undertook to convey from Harlem to St. Louis ; that only eighty-five hogs were delivered at St. Louis ; that seventeen hogs were not delivered, worth ten dollars and thirteen cents each, making in all the sum of one hundred and seventy-two dollars and twenty cents, for which amount plaintiff sues.

Judgment by default was rendered by the justice against the defendant, from which an appeal was taken to the special law and equity court of Jackson county.

Upon the trial in the appellate court the defendant insisted that the statement of facts before the justice was insufficient, but the court overruled this objection, and the plaintiff proceeded with his evidence. It appeared in the course of this testimony,

that the hogs were shipped under a written contract, which was as follows:

"S. L., K. C. & N. R. R. Co.
Kansas City Station,
September 23d, 1872."

"Memorandum of an agreement made and concluded this day by and between the North Missouri Railroad Company of the first part, by the station agent at the above named station, and A. Clark of the second part, witnesseth, that whereas the North Missouri Railroad Company transports cattle, hogs, horses, pigs, sheep, lambs, calves or other live stock at the rate of $40 per car load, or—cents per one hundred pounds, and advanced charges and other valuable considerations, the said party of the second part does in consideration thereof hereby agree to take the risk of injuries which the animals, or either of them, may receive in consequence of any of them being wild, unruly, weak, escaping, or maiming each other, or from delays, or in *consequence* of any hurt, suffocation or other effects of being crowded in the cars, or on account of being injured by the burning of hay or straw, or any other material used by the owner for feeding stock or otherwise, and for any damages occasioned thereby, and also all risks for damages which may be sustained by reason of any delay in such transportation, *and that he will see to it that the cattle, etc., are securely placed in the cars furnished, and that the cars are properly and safely fastened, so as to prevent the escape of live stock therefrom,* and it is further agreed between the parties that the first party shall in no case be held liable for damages to stock shippers under this contract in a greater sum than $200 for each horse, $100 for each cow, bull or ox, $50 for each sheep, calf or other animal ; and it is further agreed that the said party of the second part is to load and unload said stock at his own risk, the North Missouri Railroad Company furnishing co-laborers to assist, who will be subject to the orders of the owner or his agent while in that service, and that the said party of the second part who will also assume all risk for damage or injury to, or escape of the live stock, which may happen to them while in the stock yards awaiting shipment, and that the said

second party will assume the charge of feeding and watering and taking care of the stock enumerated herein, at his own expense and risk, while the same is in the stock yards of the first party awaiting shipment aboard the cars ; and it is further agreed between the parties hereto, that the person or persons riding free to take charge of the stock do so at their own risk of personal injury, from whatever cause, and that the said person shall sign the indorsement on the back of this agreement ; and this agreement further witnesseth that the said party of the second part has this day delivered to said North Missouri Railroad company two cars of hogs (one hundred more or less), to be transported to St. Louis station, on the conditions above expressed.

"S. P. Brown, Station Agent.
"A. Clark."

The plaintiff's evidence tended to show that the hogs were put into two cars, and that before the owner had time to close the door of the car the train started, and that he informed the conductor of that fact.   He got into the caboose at Harlem and did not get out until he reached the R. & L. Junction, about sixty miles from there, at which point he observed that the door was closed.   The seventeen hogs were missing at St. Louis.

Upon the introduction of the special contract, the court was asked to declare the law that the plaintiff could not recover, but the court refused to so declare, and gave the following instructions to the jury :

1. " All that is necessary to charge the defendant, who is a common carrier, is to prove the delivery of the hogs to defendant to be carried, and the burden of accounting for the hogs is then upon the defendant."

2. "The burden of proof is on the defendant to show that the hogs were not lost by any want of care or skill and diligence on the part of defendant or its employees."

3. "The defendant is liable for any loss occasioned by the negligence of its agents."

4. "If the hogs might have all been delivered at St. Louis by due and proper care of defendant or its employees, then defendant is liable for the loss."

5. "If defendant would exonerate itself from liability, it must either show the safe delivery of the hogs, or prove the loss occasioned by one of the causes excepted in its undertaking."

The verdict and judgment were for the plaintiff.

The point in regard to a variance, though of little practical importance, has been urged in this court with apparent confidence, and assumed to be based upon prior decisions of this court, which recognize the necessity of suing upon a special contract which supersedes an implied one.

At common law an action against a common carrier might be either in case, for a breach of duty, or in assumpsit based upon the implied contract. It is stated, that for four hundred years the usual declaration was in *tort* based upon the custom of the realm, and Mr. Angell, in his treatise on the law of carriers, particularly points out the advantages and disadvantages of either form of action. Lord Littledale observes, in Burnett vs. Lynch ( 5 B. & C. 609 ), that "where, from a given state of facts, the law raised a legal obligation to do a particular act, and there is a breach of that obligation, and a consequential damage, then, although assumpsit may be maintainable upon a promise implied by law to do the act, still an action on the case founded in *tort* is the more proper form of action, in which the plaintiff, in his declaration, states the facts out of which the legal obligation arises, the obligation itself, the breach of it, and the damage resulting from that breach. For that is the most accurate description of the real cause of action, and that form of action in which the real cause of action is most accurately described is the best adapted to every case."

In cases where there is a special contract with the carrier, by which the common law liability is restricted, and the action is in form *ex contractu*, it seems to be settled by the authorities that the special contract must be set out in the declaration; but where the action is in *tort* for the breach of a duty or obligation imposed by law, it is unnecessary to notice the special contract, although it may be under seal. Thus, in Kenlyside vs. Thornton (2 Blacks. Rep 1111), an action on the case for waste was maintained against the tenant, although covenant on the deed of

lease might also have been brought. And in Burnett vs. Lynch (5 B. & C. 589) an action on the case founded in *tort*, for neglect to perform covenant in a lease, was sustained by the court of King's Bench. Chief Justice Abbott observes, that "it by no means follows, that because a promise may be implied by law, this action on the case, which is in terms founded on the breach of that duty from which the law implies a promise, may not also be maintainable."

Mr. Angell observes in his treatise on the Law of Carriers, that in an action on the case against a common carrier, it is not necessary to state what his duty was, it being sufficient to state that he is a common carrier, the delivery of the goods, and their loss through negligence. It is for the defendant to set up the special contract, where there is any. (Partington vs. South Water R. R. Co., 1 H. & N. [Exch.], 392.)

It seems to be settled, in this State at least, that a common carrier cannot relieve himself by special contract from the responsibility which he incurs at common law, for the exercise of due diligence. A diversity of opinion has prevailed as to the degree of negligence for which he shall be held responsible, but in this State he is required to exercise the highest degree of care exacted by the common law. (Michigan S. & N. I. R. R. vs. Heaton, 37 Ind. 448 ; New World vs. King, 16 Hen. W. S. 469 ; Welsh vs. P., F. W. & K. R. R., 10 Ohio, 65.)

The action in this case is based upon the common law responsibility of the carrier for negligence from which no special contract could relieve him. The liability of the defendant does not arise from a special contract, but in despite of it. It is not based upon contract either expressed or implied, but upon a neglect of a public duty. The form of the complaint before the justice is not in exact accordance with such as are required in actions on the case, in a court where formal pleadings are required, but it may be considered as substantially an action *ex delicto* or founded in *tort*.

The case of Davidson vs. Graham (2 Ohio St. 131), and Camp vs. Hartford and New York Steamboat Company, decided by the Supreme Court of Errors of Connecticut in 1876 (3 L. &

E. Rep. No. 17), are actions of assumpsit, and, therefore, not applicable to this case. The court below, therefore, properly ruled that there was no variance.

The instructions given by the court are abstractly correct, but not applicable to the facts in evidence. They do not call the attention of the jury sufficiently to the duty devolved on the plaintiff under his special contract of taking care of the stock and seeing that they were securely placed in the cars. The owner obligated himself to see that the cars were safely and properly fastened, so as to prevent the escape of the hogs. It appears from his own statement that this was not done, but he excuses himself by saying that the train started before he had an opportunity of shutting the doors. As the special contract imposed on the plaintiff this duty, it should have been left to the jury to determine whether the escape of the hogs was owing to the negligence of the plaintiff, or of the defendant's servants. And the burden of proving this negligence on the part of the defendant was, by the special contract, thrown upon the plaintiff.

In Louisville L. & R. R. Co. vs. Wedger (Am. Law Reg. for 1874, p. 149), which was a case where the contract was similar to the present, the Kentucky court of appeals observed : "When the owner contracts to load and unload his stock, and to take charge of them during their transportation, and does in fact do so, the burden of proof, when the company is charged with negligence for the loss or injury to the stock, is upon the owner, as the party who has the care of the property is presumed to know how the injury occurred, and must himself suffer the loss, unless negligence is shown on the part of the carrier or his employees."

The decisive question in this case was, whether the admitted neglect of duty on the part of the owner was occasioned by the acts of the defendant's officers, or was the result of his own negligence. It devolved upon the plaintiff to show that he was prevented from closing the doors of the cars by the acts of defendant or its agents, and that he did everything in his power to see to the fastening of the cars.

The judgment is reversed and the cause remanded. The other judges concur, except Sherwood, C. J., who is absent.