[No. 6027.]

## ESTES ET AL. v. THE DENVER & RIO GRANDE RAILROAD COMPANY.

1. **Appeals—County to District Court — Amendments — Increase of Ad Damnum**—In an appeal from the county court to the district court, all proceedings are de novo. Questions which might have been agitated in the county court may be presented, though not presented in the county court. But the cause remains the same; the jurisdiction of the district court depends on that of the county court, and an amendment of the complaint, increasing the damages demanded to an amount in excess of the jurisdiction of the county court, cannot be allowed.—(385-387)

2. **Common Carrier — Contract Limiting Liability — Agreements** between the carrier and consignor of goods limiting the liability of the carrier, or prescribing conditions upon which it shall attach, are, even when valid, strictly construed. A covenant by the shipper of live stock that "as a condition precedent to his right to recover for any loss or injury to such stock he will give notice in writing of his claim to some officer, etc., or to the nearest station agent, etc., before said stock is removed from the place of destination * * * and before said stock is mingled with other stock," has no application, where the ship-

per's claim is for a loss occasioned by a decline in the market price, during unreasonable delay in the carriage. The notice is required to be given only where the claim is for physical injury to the animals.—(389)

Even where the contract provides that the shipper assumes all risk of injury which the animals may receive "in consequence of any of them being wild, unruly, weak, or, by reason of maiming each other or themselves," the carrier will be liable if injuries of this character occur by reason of unreasonable delays in the carriage and the consequent fatigue, exhaustion and restlessness of the animals.—(390)

A common carrier cannot, by contract, avoid liability for his own negligence.—(387)

And an action may be maintained against the carrier upon his common-law liability for negligence, notwithstanding the shipper may have entered into a special contract with him. Such contract, even if valid, is matter of defense.—(387)

3. **Evidence—Competency**—A witness familiar with the published market reports which are commonly accepted by dealers as authentic, and by which their transactions are governed, may, from the knowledge so acquired, testify as to the market value of a particular commodity on particular days.—(388)

Willard v. Mellor, 19 Colo. 534, distinguished.—(391, 392)

4. **Common Carriers—Liabilities for Delays in Carriage**—Unnecessary delays in the carriage of live stock, and the consequent shrinkage in weight, or other material damage, charges the carrier. The burden rests upon him to show, either that he was not responsible for the delay, or that he was exempted by a valid special contract.—(391)

*Error to Mesa District Court* — Hon. THERON STEVENS, Judge.

Mr. HENRY R. RHONE and Messrs. ROGERS, SHAFROTH & GREGG for plaintiffs in error.

Mr. E. N. CLARK, Mr. W. R. KING, Mr. J. G. McMURRY and Mr. RICHARD PEETE for defendant in error.

Mr. JUSTICE GABBERT delivered the opinion of the court:

The judgment of the district court must be reversed, but all questions urged upon our attention

which can readily be eliminated by amending the pleadings before another trial, will not be considered, and we shall, therefore, limit our decision to such questions as are necessary to guide the parties when the case is retried.

The individuals doing business under the firm name of The Webster City Cattle Company delivered to the Rio Grande Western Railway Company, at Thompson Station, in Utah, eight hundred and twenty-four head of cattle in twenty standard-gauge cars, billed and routed *via* The Denver & Rio Grande Railroad Company to Denver, and from thence over the Burlington & Missouri River to the city of Omaha, Nebraska. The cars were delivered by The Rio Grande Western Railway Company to The Denver & Rio Grande Railroad Company at Grand Junction. Thereafter, the shippers brought suit in the county court of Mesa County against the Denver & Rio Grande Railroad Company to recover damages, alleging in their complaint that this company negligently delayed the transportation of the cattle over its road to the city of Denver, by running the train on which the cattle were shipped at an unusually slow rate of speed; by negligently refusing the use of yards along its line where the cattle could be unloaded, watered and fed; by keeping the cattle in the cars in which they had been shipped from Thompson Station for nearly forty-eight hours without water or feed, causing the cattle to greatly shrink in flesh; by negligently and without cause side-tracking the train at various side-tracks on its line of road, for hours at a time; and by negligently attempting to pull the train by defective motive power, and by using defective cars and engines. It is then alleged that, by reason of these negligent, careless and wrongful acts of the defendant, eighteen head of the cattle died, and the balance greatly de-

preciated in value; that plaintiffs were compelled to pay a feed bill of $102.00 for the feeding and care of their cattle at Pueblo; that, by delaying the transportation of the cattle, the market price thereof declined from twenty-five to fifty cents per hundred pounds between the time when the cattle should have reached the city of Omaha, and the time when they did actually reach the market at that place and were sold; and that, by reason of these various alleged negligent and wrongful acts, the plaintiffs were damaged in the sum of two thousand dollars.

As a defense, the defendant answered that it received of the plaintiffs the cattle mentioned in the complaint under three certain contracts entered into with the plaintiffs, partly printed and partly written, all being identical in form, and the contents of which were the same, with the exception that one of the contracts covered the transportation of cattle in eight cars, and the other two covered the transportation of cattle in six cars each. A copy of the contract, as set out in the answer, so far as necessary to consider, is as follows:

"Whereas, the said The Denver & Rio Grande Railroad Company, as a common carrier, engages in the transportation of livestock from Thompson Station to South Omaha Station, and transports such livestock at a lower rate per car carried at owner's risk, and at the valuations hereinafter stated and upon the conditions hereinafter set forth, than it does in the absence of such assumption of risk and an agreement of value and as to conditions; and

"Whereas, the party of the second part has requested the said The Denver & Rio Grande Railroad Company to transport the stock hereinafter referred to at its reduced rate, and subject to the terms and conditions hereinafter stated;

"Now, in consideration that the party of the

first part will transport, for the party of the second part, six carloads of cattle, of the agreed value of thirty dollars per head, from Thompson Station to Denver Station, at its reduced rate, being, to wit, at the rate of ninety-five dollars per standard carload, the said party of the second part hereby covenants and agrees as follows:  *  *  *

"(2)   That the value of said livestock at the place and date of shipment does not exceed  *  *  * for cattle, thirty dollars per head.  *  *  *

"(3)   The said party of the second part hereby further agrees to accept, and does accept, for the transportation of said livestock, the cars provided by the said company, and used by it for the shipments of stock, and assumes all risk of injury which the animals, or either or any of them, may receive in consequence of any thereof being wild, unruly, weak, or by reason of maiming each other or themselves, or in consequence of heating or suffocation, or by reason of other ill-effects of being crowded in the cars; or on account of injury by the burning of hay, straw, or other material used by the owner or shipper or his agent, for feeding the stock, or otherwise. And also all risks of damages which may be sustained by reason of any delay in transportation, and all risk of escape of any portion of such stock; and hereby releases the said company from any liability for loss or damage to such stock or animals from any other cause or thing, not resulting from the negligence of the party of the first part.  *  *  *

"(7)   The party of the second part covenants and agrees that, as a condition precedent to his right to recover any damages for loss or injury to such stock, he will give notice in writing of his claim therefor, to some officer of the party of the first part or its nearest station agent, before said stock is removed from the place of destination above men-

tioned, or from the place of delivery of the same to the party of the second part, and before said stock is commingled with other stock.''

For replication, the plaintiffs admitted that the contracts were made and entered into by and between them and the defendant, as set out in the answer; and alleged that, in accordance with the terms thereof, ''due notice in writing, and verbally, was given to the officers and station agents of the defendant company of plaintiffs' claim for damages to said cattle at and before the same were commingled with other stock, and the defendant promised and agreed to pay plaintiffs' claim for damages.''

The trial of the case in the county court resulted in a verdict and judgment for the plaintiffs, from which the defendant appealed to the district court. In the latter tribunal, the plaintiffs tendered an amended complaint, the purpose of which was to increase the *ad damnum* to the sum of $3,500.00, and asked leave to file same, which was denied.

Thereafter the case came on for trial before the court and a jury, on the pleadings filed in the county court. At the conclusion of the testimony on the part of the plaintiffs, the defendant interposed a motion for nonsuit, based substantially upon the grounds that, by the pleadings and evidence, the action was brought to recover on the common-law liability of defendant as a common carrier, when it appears, from the pleadings in the case, that the cattle involved were shipped under special contract limiting such liability; and for the further reason that, under such contract, the plaintiffs covenanted and agreed that, as a condition precedent to their right to recover damages for any loss or injury to their stock, they would give notice in writing of their claim therefor to some officer of the railroad company, or its nearest station agent, before the stock was removed

from the place of delivery, and before it was commingled with other stock, and it appears, from the evidence, that no such notice was given in the time and manner as required by the contract. This motion was sustained, and a judgment of nonsuit entered, from which the plaintiffs appealed to this court; but, as we are without jurisdiction to entertain the appeal, we have directed that the case be entered as pending on error, and will consider it accordingly. Such further matters as are necessary to consider in passing upon the questions we shall determine, will be stated in the course of the opinion.

The first question relates to the action of the trial court in refusing leave to file the amended complaint increasing the *ad damnum* to $3,500.00. The jurisdiction of county courts, except in matters relating to the estates of deceased persons, is limited to suits where the debt, damage or claim, or the value of the property involved, does not exceed two thousand dollars; and, in order to give these courts jurisdiction of such actions, it must appear from the pleadings, that the subject-matter of controversy is within the jurisdiction fixed by the statute. — Rev. Stats., §§ 1526-1527; 1 Mills' Ann. Stats., §§ 1054-1055.

The statute further provides that appeals may be taken to the district court from all final judgments of the county court except judgments by confession. —Rev. Stats., § 1536; Mills' Ann. Stats., § 1085 (except as provided in section 1541, Rev. Stats.). It also further provides that "In all appeals provided for in the foregoing section, the proceedings in the appellate court shall be in all respects *de novo*."

It further provides: "Said appellate court shall consider and pass upon all objections to the pleadings and proceedings in the said cause which may have been made in the county court, and make such

orders and render such judgments or decrees as shall be meet and proper, in the same manner as though such cause had been originally begun in said district court."—Rev. Stats., § 1539; Mills' Ann. Stats., § 1089.

On the strength of this latter provision, counsel for plaintiffs contend that the district court had the authority to permit the complaint to be amended, claiming damages in excess of the jurisdiction of the county court. By the appeal allowed by the statute from the county to the district court, the latter tribunal is not vested with power to review the proceedings of the lower court, but the case is brought to the district court for trial *de novo*—that is, fresh, anew; but it is still the same action that was commenced in the county court, and the purpose of the statutory provision last quoted is to give the parties an opportunity to present all questions raised in the county court for the judgment of the district court, and to take all steps therein which could have been taken in the county court, without regard to whether they were taken in that forum, or, if taken, what the judgment may have been. In other words, the purpose of the statute was to lodge the case for trial anew in the district court, independent of any judgment of the county court. It is still, however, the same case, but it comes to the district court in a special manner, by which the jurisdiction of the district court is entirely derivative, and its authority to entertain it depends upon the jurisdiction of the county court. Hence, it necessarily follows, that, on appeal, the *ad damnum* cannot be increased beyond the jurisdiction of the court from which the appeal was taken, for the very obvious reason that a judgment in the case cannot be rendered by the district court that could not have been rendered by the county court.—*Linton v. Vogel*, 98 Pa. St. 457; *Shaw*

(25)

*v. Squires,* 153 Pa. St. 150; *U. P. Ry. Co. v. Ogilvy,*
18 Neb. 638; *Ijames v. McClamroch,* 92 N. C. 362;
*Robeson v. Hodges,* 105 N. C. 49; *Crow v. Cunning-
ham,* 5 Cold. (Tenn.) 255; *Gray v. Jones,* 1 Head.
(Tenn.) 543; *Mays v. Dooley,* 59 Ind. 287; *Greer v.
Burnam,* 69 Ga. 734.

· So far as advised, the precise question under
consideration has never been decided by this court,
or the court of appeals, but the controlling principles,
namely, that the jurisdiction of the appellate court
depends upon the jurisdiction of the court from
which the appeal is taken, has been determined in
*Phillips v. Corbin,* 25 Colo. 62, and *Arapahoe Co. v.
Denver Union Water Co.,* 32 Colo. 382; and that the
jurisdiction of the court to which the appeal is taken
is limited to the jurisdiction of the court from which
the appeal is prosecuted, in *Smith v. Clark,* 38 Colo.
89, and *Thormily v. Pierce,* 10 Colo. 250. Following
these decisions, the logical conclusion is, that, in
amount, the district court could not render a judg-
ment in excess of that which the county court could
have pronounced; and hence, the *ad damnum* in an
action appealed from the county to the district court
cannot be increased to a sum in excess of the jurisdic-
tion of the court in which the suit was originally
brought.          ·

Plaintiffs based their right of action upon the
common-law liability of the railroad company for
negligence as a common carrier, and as the defend-
ant set up a special contract which the replication ad-
mitted, it is urged by counsel for the railroad com-
pany that the action cannot be maintained. This was
one of the grounds urged in support of the motion
for nonsuit, but we do not regard it as tenable. A
carrier, in accepting shipments, always accepts them
subject to the liabilities imposed by law, except as
this liability may be varied or limited by special

contract. One of the liabilities which the law imposes is that the carrier is responsible for negligence, but it is settled beyond controversy, based upon the ground of public policy, that a railroad company, being a common carrier, cannot, by contract, relieve itself from liability for its own negligence.—*Union Pacific Ry. Co. v. Rainey,* 19 Colo. 225. Where, then, as in the present instance, the carrier undertakes by special contract to exempt itself from liability for negligence, such contract to that extent is a nullity. Consequently, the carrier is still liable for negligence as at common law, and, necessarily, suit may be maintained by the shipper for a breach of the carrier's duties in this respect. In other words, in such circumstances, the carrier is not liable for the violation of the terms of a special contract, but for the violation of a duty imposed by law, which it cannot escape by contract; so that the effect of a special contract to the extent that it is valid is merely to limit the liability of the carrier as imposed by common law, or to define the conditions under which such liability shall attach, and is, therefore, a matter of defense.—*Nelson v. Gt. Northern Ry. Co.,* 72 Pac. (Mont.) 642; *So. Pac. v. Arnett,* 111 Fed. 849; *Nicoll v. East Tenn. V. & G. R. Co.,* 15 S. E. (Ga.) 309; *Witting v. St. L. & S. F. Ry. Co.,* 28 Mo. App. 103; *Clark v. St. L., K. C. & N. W. Ry. Co.,* 64 Mo. 440; *Coles v. Louisville, E. & St. L. R. Co.,* 41 Ill. App. 607; *Empire State Cattle Co. v. A., T. & S. F. Ry. Co.,* 129 Fed. 480.

As was aptly stated in the Witting case, *supra:* ''If the defendant carrier claims that the goods were shipped under a special contract, excepting other risks and perils than those excepted at common law, it is for him to establish the contract and show that the risk or loss was excepted by such contract. We cannot see how the court can nonsuit a plaintiff after

he has made a *prima facie* case, as long as the burden of proof on any part of the case rests with the defendant.''

As above stated, plaintiffs pleaded a compliance with the terms of the contract of shipment relative to notice for damages claimed to have been caused their cattle before they were commingled with other stock. Under this plea, they offered to show that such notice had been waived by the company, which was refused. It is not necessary to determine whether this ruling was correct. Before another trial, plaintiffs, if request therefor is made, should be permitted to so amend their pleadings as to eliminate this question.

The next question to consider is whether or not evidence was offered or received which established damage to the cattle that did not fall within the provisions of paragraph 7 of the contract, as above quoted, with respect to notice. There was evidence tending to prove unnecessary delay in moving the train transporting the cattle over the defendant's road. One of the plaintiffs was a cattle man of many years' experience. He testified that through information acquired from market reports and prices current there was a considerable decline in the price of cattle in Omaha at the time they arrived at that market, as compared with the date they should have arrived had the defendant company exercised diligence in moving the train transporting such cattle. This testimony, on the motion of the defendant, was stricken out. It is a well-known fact that commodities are bought and sold on quotations daily telegraphed to newspapers from commercial centers and published therein, or in prices current. Such market reports are public and are recognized as authentic, and a witness obtaining information from these sources is competent to testify as to the knowledge

thus gained.—*International & G. N. R. Co. v. Dimmitt County Pasture Co.*, 23 S. W. (Tex.) 754; *The Cleveland & T. R. R. Co. v. Perkins,* 17 Mich. 296; *Gulf, C. & S. F. Ry. Co. v. Patterson,* 24 S. W. (Tex.) 349.

The court erred in sustaining the motion to strike.

Agreements between a carrier and shipper limiting the liability of the former or prescribing conditions upon which liability shall attach, even when valid, are strictly construed against the carrier. The evident purpose of the provisions of paragraph 7 with respect to notice was to afford the carrier an opportunity to examine the cattle before they were commingled with other stock in order that, by such inspection, unfounded claims for injuries might be detected, or the extent of such injuries ascertained. From a reading of the paragraph, it is clear that the claim specified, of which notice is to be given, is confined to loss or injury to stock during transportation. Damages resulting from a decline in the market price is an entirely different matter. For loss thus occasioned, there is no necessity for the examination of a shipment of cattle before they are slaughtered or intermingled with other stock. Such damage can only be ascertained from other sources; and a fair construction of the paragraph establishes beyond question that a loss caused by a falling market is not embraced within its terms requiring notice. In brief, the notice required is limited to damages for physical injuries to the stock.—*A., T. & S. F. Ry. Co. v. Poole,* 87 Pac. (Kan.) 465; *Kramer v. Chicago, M. & St. P. Ry. Co.,* 70 N. W. (Ia.) 119; *Pecos & N. T. Ry. Co. v. Evans-Snyder-Buel Co.,* 97 S. W. (Tex.) 466.

Inasmuch, then, as plaintiffs offered evidence which, if considered, would have *prima facie* estab-

lished damages in their favor, because of a decline in the market, the motion for a nonsuit should not have been sustained.

Plaintiffs claim that, between the point of shipment and Pueblo, eighteen head of the cattle died, and were removed from the cars at the latter place. It is urged by their counsel that the notice required by the contract does not apply to dead stock. We do not deem it necessary to pass upon this question, in view of the fact that it is asserted notice of the loss thus sustained was, in fact, given the railroad company, or was waived by it. The pleadings can be so amended as to eliminate this question.

It is only necessary to consider one further matter relating to the action of the trial court in excluding evidence. The plaintiff referred to testified that, because of delay in moving the train over the road of the defendant, the cattle were without feed or water for about fifty-three consecutive hours; that such delays caused some of the cattle to become tired and lie down, and that while in this position they were trampled upon by other cattle and maimed, bruised, or killed. He also testified that he attended the shipment, and that the cattle not killed were injured because of the alleged unnecessary delays resulting from shrinkage to the amount of three dollars per head. The witness was certainly competent to testify on this subject.—*So. Pac. Ry. Co. v. Arnett, supra; St. L., I. M. & S. Ry. Co. v. Edwards,* 78 Fed. 745. But his testimony, on motion of the defendant, was stricken. Assuming that a case was made which would render this testimony material, the question to determine is, whether or not the ruling on the motion was error. The contracts of shipment appear to provide that the railroad company should not be responsible for damages resulting from the natural vice of the animals, like lying down,

trampling upon each other, pushing and crowding. Assuming the contracts in this respect to be valid, and a case is made by plaintiffs, the testimony would be competent for two reasons: (1) There was testimony to prove injury to the stock because of unnecessary delay, which resulted in an unnatural shrinkage in weight; and (2), where it appears the carrier was guilty of unnecessary delay in transporting cattle, and that they were materially damaged, the shipper makes a *prima facie* case. — *Johnstone v. Richmond & D. R. Co.,* 17 S. E. (S. C.) 512; *Mo. Pac. Ry. Co. v. Scott,* 26 S. W. (Tex.) 239; *Boehl v. Chi., M. & St. P. Ry. Co.,* 46 N. W. (Minn.) 333.

The burden, then, rested upon the carrier to show that the injuries for which damages were claimed resulted either from an act for which it was not responsible, or a cause from which it had legally exempted itself by special contract. — *Johnstone v. Richmond & D. Ry. Co., supra.*

The judgment of the district court is reversed, and the cause remanded for a new trial, and such further proceedings as will be in harmony with the views expressed in this opinion.

                              *Reversed and remanded.*

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.

---

### On Petition for Rehearing.

Mr. JUSTICE GABBERT delivered the opinion of the court:

Counsel for appellee have filed a petition for rehearing based solely upon the ground that we erred in holding that the testimony of the witness with respect to market prices was admissible. In support of this contention, *Willard v. Mellor,* 19 Colo. 534, is

cited. Our attention was not called to this case in either the original briefs, or on oral argument. In that case it was held that circulars sent out from day to day by merchants dealing in a certain commodity purporting to give the market price of such commodity upon the day of issuance, it not appearing that they were authenticated, and the sources of information from which the prices quoted not having been shown, were not admissible in evidence for the purpose of establishing the market values of the commodity to which they referred. We have not held to the contrary. The record discloses, as previously stated, that the witness had been engaged in buying and selling cattle for many years; that the market reports from Omaha, to which place the cattle of plaintiffs were shipped, are always consulted by dealers in cattle shipping to that point, and that their transactions are governed by such reports; that he had consulted the standard market reports, and by this means learned the prices at which cattle were quoted on different days in the Omaha market.

From this testimony, we hold, not that the market reports are admissible, but that they are proper sources of information to which a party may resort for the purpose of ascertaining market prices, and that one acquainted with the market in this way is competent to testify on the subject of market values. We know that such market reports as we are considering are constantly received and acted upon by dealers. Before a witness can testify regarding market values, he must appear to be qualified. If he has gained a knowledge on the subject from a source which the business world uniformly recognizes as trustworthy, and acts upon, he is certainly qualified to testify on the subject of the market prices of commodities embraced in such reports for the period which they cover.—*Sisson v. Cleveland & Toledo R.*

*R. Co.*, 14 Mich. 489; *Smith v. N. C. R. R. Co.*, 68 N. C. 107; *Nat'l Bank of Commerce v. City of New Bedford*, 56 N. E. 288.    See, also, *Whitney v. Thacher*, 117 Mass. 523.

The petition for rehearing is denied.

Mr. JUSTICE MUSSER and Mr. JUSTICE HILL concur.

Opinion filed December 5, 1910; rehearing denied February 6, 1911.