## COOKE v. NORTHERN PACIFIC RAILWAY COMPANY.

### (133 N. W. 303.)

**Pleading — character of action.**

1. The character of an action as brought must be determined by the complaint.

**Carriers — limitation of liability — notice of claim for damage or injury.**

2. A clause in a special contract with a common carrier, which provides in substance that when property is injured, as a condition precedent to a right

Note.—Under the general rule that a carrier cannot exempt itself from liability for losses caused by its negligence, the stipulation in a carrier's contract, requiring notice of losses to be given within a specified time, would be void if restricted to a carrier's liability for its negligence. But it is generally held, however, as shown by the cases on the subject collated in a note in 17 L.R.A.(N.S.) 628, that the stipulation is not a restriction of liability, but is rather a condition precedent, affecting not the carrier's liability, but the shipper's remedy; the general purpose of such a stipulation being, of course, to permit the carrier to make an investiga-

of action, plaintiff must give notice in writing of any claim for damages or injury to the officer or station agent, before said property is removed from the place of destination, is not prohibited by the provisions of law limiting the right of such common carrier to exonerate itself from certain liabilities for negligence, fraud, and wilful wrongs.

**Pleading — amending — statement of new cause of action.**

3. Plaintiff, having elected to bring an action *ex delicto*, must stand or fall by the allegations as made. The power to amend is limited. A new and distinct cause of action cannot, at the time of the trial, without consent, be thrust into a complaint by amendment.

**Review of former decisions.**

4. Certain cases considered, and regarded as not an authority against, but rather supporting, the procedure adopted by the parties in this action.

Opinion filed May 2, 1911. On rehearing June 22, 1911.

Appeal from District court, Stutsman county; *Burke, J.*

Action by John D. Cooke against the Northern Pacific Railway Company. From an order denying a new trial after direction of verdict for defendant, plaintiff appeals.

Affirmed.

*John Knauf* and *S. E. Ellsworth,* for appellant.

*Ball, Watson, Young, & Lawrence,* for respondent.

POLLOCK, Special Judge. This is an appeal from an order denying a motion for a new trial. Certain irregularities with reference to the admission of testimony, as well as errors of law occurring at the trial, are claimed, all of which were duly excepted to. There are twenty-two specifications of error, most of them with reference to the introduction of evidence. In order to properly consider these alleged errors, it will be necessary to analyze the issues as presented by the pleadings.

---

tion of the claim while the matter is fresh and easily investigated; and the great majority of the cases discuss the validity of the stipulation solely from the standpoint of its reasonableness. The reasonableness of the time fixed in a contract of shipment of live stock for presentation of a claim for damages is the subject of another note in 7 L.R.A. (N.S.) 1041.

The effect of the removal of live stock from the carrier's premises before notice of a claim for damages, where such notice is given in time for examination, is treated in 24 L.R.A. (N.S.) 866.

Among other things, the plaintiff alleges: That on March 7, 1907, he delivered, in good condition, to the Chicago, Rock Island, & Pacific Railway Company, at Reynolds, Illinois, eight horses for transportation to McHenry, North Dakota. Said railroad company delivered said horses, still in good condition, to the Burlington, Cedar Rapids, & Northern Railway Company, a connecting common carrier. Later, and on March 9, 1907, the last-named company delivered said horses, in good condition, to the defendant company as a common carrier at the Minnesota transfer, near St. Paul, Minnesota, for final transportation to McHenry, North Dakota. That defendant received said horses for adequate reward agreed to be paid. That while said horses were in the possession of the said defendant, it operated the train of cars in which said horses were being transported, in a manner that was grossly careless and negligent, causing said car to receive violent shocks and jolts, which threw down, maimed, injured, and bruised all of said horses, and caused the death of two of them. Plaintiff further alleges carelessness and negligence in providing proper facilities for unloading said horses, for their exercise, refreshment, feeding, and watering, and claims that on March 15, 1907 (the time the horses were delivered to him by defendant), they were bruised, disabled, in very poor order, and were greatly reduced in value; and further alleges that, "by reason of the careless, negligent, and cruel treatment of said horses by defendant, and its failure to use ordinary care to provide for the safety and welfare of the same while in its possession for transportation as aforesaid, the plaintiff has sustained the entire loss of two of said horses, and six others have been injured and reduced in value, to plaintiff's aggregate loss and damage in the sum of $1,000, and therefore demands judgment for that amount."

Defendant, in his answer, denies each and every allegation in said complaint contained, except so much as was thereinafter specifically admitted. After admitting the corporate capacity, it admits and alleges that, on or about the 9th day of March, 1907, a written contract was made and entered into between plaintiff and defendant for the delivery and shipment of certain goods and stock by the defendant company from the Minnesota transfer to McHenry, North Dakota; and further alleges that said contract of shipment contained the following provisions and conditions precedent, to wit: "The said shipper

further agrees that as a condition precedent to a right to recover any damages for loss or injury to any of said stock, he will give notice in writing of his claim therefor to some officer or station agent of the said company before said stock has been removed from the place of destination or mingled with other stock." And further alleges that no such notice in writing of any claim for damages or injury was served on the defendant at any time prior to the commencement of said action, and demands that the plaintiff take nothing by this suit.

At no time throughout the trial were any amendments asked or made to the pleadings as above set forth. The important error complained of is the granting of defendant's motion for an instructed verdict, after both parties had rested. The motion was made as follows: "The defendant moves to strike out all of the testimony of the plaintiff with reference to any duty, liability, undertaking, or implied contract, and to strike out all of the testimony with regard to any duty or obligation upon the part of the defendant, except the written contracts introduced upon the cross-examination of the plaintiff's witness, *viz.*, Exhibits A1 and A2. In connection with the motion to strike out this testimony, the defendant moves the court to direct a verdict in favor of the defendant and against the plaintiff for a dismissal of the action on the ground of failure of proof and total absence of proof to support the allegations of the complaint, and upon the ground that the complaint of the plaintiff charges a delivery of the stock in question, and for which the plaintiff seeks to recover damages, to the Burlington, Cedar Rapids, & Northern Railway Company, to the Chicago, Rock Island, & Pacific Railway Company, being a delivery by one company to the other as a connecting carrier. Said complaint also charges a delivery by the Chicago, Rock Island, & Pacific Railway Company to the Northern Pacific Railway Company, as a connecting carrier, and in no other manner whatsoever. That all of the allegations of the complaint are based upon a duty and liability of the defendant company as connecting carrier, and the plaintiff asks damages for a breach of duty under the common-law liability, or for a tort or wrong; and there now appears in evidence an express contract, entered into between the plaintiff and defendant for a special consideration, and upon terms and conditions agreed to by the parties, and there is therefore a total failure of proof to sustain the allegations of the complaint." This same motion was

made at the close of plaintiff's case, and was overruled *pro forma,* and thereafter, when both parties had rested, was renewed for the same reasons, at which time the court allowed the motion, and instructed the jury to find for the defendant, which they did by a proper verdict duly entered.

1. The character of this action as brought must be determined by the complaint. Plaintiff's allegations stated a cause of action *ex delicto,* and charge a violation of the common-law duties of a carrier. Some dispute arises between counsel as to whether the violation of this duty was charged as the result of ordinary or of gross negligence. Our Statute (§ 5678, Revised Codes 1905), with reference to exoneration of common carriers by agreement, being limited, at the time the facts above stated occurred (March 7 to March 15, 1907), contained the words, "gross negligence." The amendment of that section by the Laws of 1907, taking out the word "gross," did not take effect until July, 1907. A careful examination of the complaint leads us to the conclusion that gross negligence was not charged. However, we do not deem a discussion of this matter as important, in view of another situation which presents itself upon the record.

2. Section 5678 of the Revised Codes of 1905 reads as follows: "A common carrier cannot be exonerated, by any agreement made in anticipation thereof, from liability for the gross negligence, fraud, or wilful wrong of himself or his servants." It will help to clarify the dispute growing out of the pleadings in this case to first determine whether the clause in the contract with reference to the condition precedent to the right of recovery,—namely, that of giving notice in writing of any claim for damages or injury to the officer or station agent of said company before said stock has been removed from the place of destination or mingled with other stock,—is prohibited by the law of the state of Minnesota, where the contract was made, or by § 5678, above, and whether such a clause in a special contract with a common carrier, made for a valuable consideration, can be supported as between the parties. We think the principle involved in this question has been settled by this court in the case of Hanson v. Great Northern R. Co. 18 N. D. 324, 138 Am. St. Rep. 768, 121 N. W. 78. Judge Fisk discusses the proposition, beginning on page 328 of 18 N. D. wherein he had under consideration a contract with a common carrier entered into

in the state of Minnesota. After reviewing the authorities at length, he says at the bottom of page 331 of 18 N. D.: "The contract in question, . . . in so far as it does not attempt to limit defendant's liability for loss or damage occasioned by gross negligence, fraud, or wilful wrong of itself or its servants, is not contrary to the public policy of this state as expressed in the provisions of the Code above cited; but to the extent, if any, that it attempts otherwise to limit such liability, the same will not be enforced by the courts of this state." The question, then, is sharply presented by this record whether the contract does in any manner, otherwise than as above expressed, attempt to limit such liability. A similar question was before this court in the case of Hatch v. Minneapolis, St. P. & S. Ste. M. R. Co. 15 N. D. 493, 107 N. W. 1087. Chief Justice Morgan held that similar conditions or stipulations are not unreasonable as a matter of law, quoting numerous decisions. This precise question was recently presented to the supreme court of Tennessee, in the case of Mobile & O. R. Co. v. Brownsville Livery & Live Stock Co. 123 Tenn. 298, 130 S. W. 788, wherein an agreement, essentially the same as the one in the case at bar, was under consideration. That court, among other things, says: "It imposes no unnecessary burden on the consignee of stock; while it is evident that by a failure to give notice promptly the carrier is at a disadvantage, and is more or less exposed to the peril of fraudulent claims, made at a time so long after the delivery of the stock claimed to be injured that an intelligent investigation of the claim is difficult, if not impossible. If a notice, given one day after the receipt and removal of stock, will suffice, then equally would notice to the carrier months after the stock were removed be sufficient. Given, however, before or at the time of their removal, the agent of the carrier has an opportunity of examination, with the view of seeing the extent of the injury, and of ascertaining whether the animals were sound, or not, at the time of their delivery for carriage; while delay, from the many transactions of a similar character which the carrier has, would render it impossible, as is clear, to make a satisfactory investigation of the one as to which complaint is made. As against consignees, to which class, unquestionably, the defendant in error belongs, there may be no necessity for such a provision. But the rule covers both honest, as well as dishonest, shippers, and, if reasonable, as we hold it to be,

must be applied to all alike." This statement of the laws, and the cogent reason assigned, meets with our cordial approval. We therefore hold that this clause of the contract is legal and binding upon the parties.

3. We might pause here, because it is not contended that there was any proof of notice given under the terms of this special contract, except for the insistence upon the part of counsel for the plaintiff that the learned court below exceeded his powers in directing a verdict at the time and manner in which he did. As shown by the pleadings, the action was not brought upon the special contract, and we hold that that was unnecessary. The plaintiff had a choice of either bringing an action for the wrong under what is known as the common-law liability, or upon the special contract made by the parties. Counsel for the plaintiff regards the action as one which he styles *ex delicto quasi contractu.* and further insists that all of the matters growing out of the special contract are purely defensive in their nature, and that when the plaintiff proved a violation of the common-law obligation, and the extent of the damage, that was sufficient to put the burden upon the defendant to show any special defense in view of the *quasi contractu* nature of the action. The word "quasi" has already been working overtime for so long a period in fitting certain conditions of fact to meet other settled requirements of law that its use ought not to be invoked further to break down the settled distinctions between actions *ex delicto* and *ex contractu.* As Bliss, in his excellent work on Code Pleading, 2d ed. p. 7, says: "The whole case often clusters around the name, and the action is just as much an action of trover or of replevin or of ejectment as though so called in the pleading. When the statute says there shall be but one form of action, form, and not substance, is spoken of. Without classification, there is no science. Such distinctions as exist in the nature of things must be recognized, and they are equally recognized, whether a specific name be given to the suit or action, with a corresponding formula, or whether they arise from and are known only by the nature of the grievance and the character of the relief."

As was very appropriately remarked by Judge Spalding, in Taugher v. Northern P. R. Co. 21 N. D. 120, 129 N. W. 750, when, having under discussion an action for conversion, he said: "In most cases more than one remedy is applicable, and . . . [plaintiff] has his

election; while in others an action for conversion does not lie, though one for damage for breach of contract may. If the shipper elects to sue for conversion, and is unable or fails to establish the elements necessary to constitute conversion, he must fail in that form of action. The burden is on the shipper, when he elects to seek the benefit of the measure of damages in an action charging conversion, to prove the act of conversion by showing a wrongful disposition or wrongful withholding of the property."

It should be constantly remembered in this case that the issue, as framed, charges a tort. This is denied by the answer. The defensive matter of the special contract is set forth also in the answer. The record shows that the plaintiff in offering his testimony, in addition to introducing evidence to support the claim of negligence, likewise gave evidence (the contract itself), which was competent, showing the entire nature of the transaction between the parties as set forth in the answer, and which, in the very nature of things, if true, would prevent the plaintiff from recovering. In this state of the record, it appears to us that there was only one conclusion to be reached. The plaintiff himself had shown that he was not entitled to a verdict. It was not incumbent upon defendant to offer any evidence when, at the close of plaintiff's evidence, a prima facie case had not been made. Under the situation confronting plaintiff at the trial, he could not have furnished further evidence without openly confessing that a wrong form of action had been chosen. Even if plaintiff had offered to amend his complaint, a serious question might have arisen, because a radical change would have been wrought in the essential character of the action. In Mares v. Wormington, 8 N. D. 332, 79 N. W. 443, Judge Wallin, speaking for the court, says: "It is true that the authorities are not entirely harmonious upon the point; but the decided weight of the cases, and, we think, the better reason, is against allowing an entirely new cause of action to be set up by way of an amendment to a complaint. This could never be done, either at common law or in the chancery practice. . . . The power of amendment has been much enlarged by statute, but the power is nevertheless limited, and cannot be arbitrarily exercised. A new and distinct cause of action cannot be thrust into a complaint by amendment."

Reduced to its lowest terms, this record shows that the plaintiff

22 N. D.—18.

charged a tort, proved a contract, and asked judgment. As said by Dixon, Ch. J., in Kewaunee County v. Decker, 30 Wis. 624: "It would certainly be a most anomalous and hitherto unknown condition of the laws of pleading were it established that the plaintiff in a civil action could file and serve a complaint, the particular nature and object of which no one could tell, but which might and should be held good as a statement of two or three or more different and inconsistent causes of action, as one in tort, one upon money demand on contract, and one in equity, all combined or fused and moulded into one charge or declaration, so that the defendant must await the accidents and events of trial, and until the plaintiff's proofs are all in, before being informed, with any certainty or definiteness, what he was called upon to meet."

Chief Justice Ryan, in Pierce v. Carey, 37 Wis. 235, commenting on Chief Justice Dixon's language above quoted, said: "Golden words, which should ever be present to the mind of every pleader under the Code, which was designed to substitute a plain and concise statement of causes of action, and of defenses, for the intricacies of pleading at common law. All that goes to the administration of justice should be definite and certain. This is almost equally essential to the claim, the defense, and the judgment. When these become vague and loose, the administration of justice becomes vague and loose, with a tendency to rest, not so much on known and fixed rules of law, as on capricious judgment of the peculiarities of each case; on a dangerous and eccentric sense of justice, largely personal to the judges, varying as cases vary, rather than on abiding principles of right, controlling equally the judgments of courts and the rights of suitors. And it is time that those who administer the Code should recur to its policy of plain and direct certainty, and rescue it from prostitution to duplicity and ambiguity, and all the juridical evils of loose and uncertain administration, more dangerous to even and uniform justice than the worst technicalities of the most intricate system. Simplicity, not uncertainty, is the object of the Code. And pleadings under it should be as certain in substance as they were before it; more certain in form, because freed from technical formality."

We hold that the plaintiff, having elected to bring an action *ex delicto* and sue for the alleged wrongful act of the defendant, under the

record in this case, having failed to establish such a relation existing between the parties, failed to make out a prima facie case; and therefore the lower court committed no error in instructing the jury to find for the defendant.

4. This practically disposes of all the specifications of error. However, counsel for the plaintiff has called the attention of the court, with special emphasis, to a certain class of cases, as, for example, the cases of Nelson v. Great Northern R. Co. 28 Mont. 297, 72 Pac. 642, and Southern P. Co. v. Arnett, 50 C. C. A. 17, 111 Fed. 849, upon which they rely for the procedure claimed by them to be correct in this case. An analysis of the issues as framed by the pleadings in those cases does not support this conclusion. In Nelson v. Great Northern R. Co. there were sixteen paragraphs in the complaint, the first three, with reference to corporate capacity, etc., being admitted by the answer; 5, 6, 7, 8, and 9 were denied; 10 was partially admitted; while 4 and 11 to 16, inclusive, were neither denied, specifically admitted, nor qualified. Paragraph 4 charged the common-law duty. The remaining paragraphs, undenied, alleged a tort, the damage, and its extent. The plaintiff then filed a reply, denying the facts with reference to the special contract in the answer. The pleadings, as thus framed, practically places the defendant in the attitude of having confessed the tort and voluntarily proceeded to trial upon the issues involved in the special contract. No such condition arises in the case at bar, because, as before stated, there was the allegation of a tort, a general denial, and no issue in fact was taken by the plaintiff with the defendant upon the defensive matter of the special contract set forth in the answer.

The Southern Pacific Case, found in 50 C. C. A. 17, 111 Fed. 849, and its companion case (Empire State Cattle Co. v. Atchison, T. & S. F. R. Co.) found in (C. C.) 129 Fed. 480, wherein Judge Pollock, of the United States district court of Kansas, followed the rule laid down by Judge Thayer in the Arnett Case, 50 C. C. A. 17, 111 Fed. 849, as presented to this court, amounts to no more, when applied to the facts in this case, than a statement that a special contract is purely defensive matter; and Judge Thayer, at page 851 of 111 Fed., at page 20 of 50 C. C. A., of the Arnett Case, specifically states, when referring to the contention of the defendant that he should have had a directed verdict: "We do not find that any question of this sort was raised or discussed

in the trial court, and, not having been raised below, it is not open to discussion here." In the decision by Judge Pollock (C. C.) 129 Fed. 480, the matter came up by way of motion by the defendant, requiring plaintiffs to amend their petition by stating whether the contracts of shipment of the cattle were in writing or oral, and that they be required to attach copies of such contracts to their petition; and the exact question before the court was, admitting the contract of shipment between the parties in writing to exist, and in the possession of the plaintiffs, as was .admitted at the oral argument: Must the plaintiffs plead and bring such contracts as a part of their case, or are such contracts a matter of defense to the carrier? And upon a situation as there set forth the court held, following the opinion of Judge Thayer: "A special contract, when executed by the carrier, is a defensive weapon, to be made use of by the carrier when sued by the shipper, against any dereliction of duty against which it was designed. to offer protection." To require the plaintiff to attach copies of the contract to the petition would be tatamount to taking from him the right to elect to sue for the tort, which, under well-sustained authority, cannot be done. Plaintiff knows beforehand, however, whether he has a special contract; and if he has, and the provisions thereof are legal, he might as well bring his action *ex contractu;* but, if he believes the conditions of the contract are unlawful, he can fully protect his rights by bringing his action for the tort, when the defendant can plead the special contract as defensive matter, and have its legality tested in the tort action, under the rules as laid down by the decided weight of authority. Bliss, Code Pl. 2d ed. § 14; Clark v. St. Louis, K. C. & N. R. Co. 64 Mo. 440; Oxley v. St. Louis, K. C. & N. R. Co. 65 Mo. 629.

From the foregoing, it follows that the order and judgment of the lower court must be affirmed.

MORGAN, Ch. J., not participating. BURKE, J., being disqualified, did not sit; Honorable CHAS. A. POLLOCK, Judge of the Third Judicial District, sitting in his place by request.

## On Rehearing.

The petition of the plaintiff for a rehearing having been granted, a reargument of the case was had, and extended briefs were filed

At the beginning of paragraph 3 of the main opinion, the writer here-of made an error in saying, "Because it is not contended that there was any proof of notice given under the terms of this special contract." There is evidence that such notice was given, and counsel for defendant does not dispute the fact. The petition for rehearing was based largely upon this inadvertent misstatement of the evidence. We wish to say, however, that the language of the opinion, with the above-quoted words omitted, expresses the real and paramount thought, and what follows is not changed in the slightest degree by a reversal of that particular state-ment of fact. The record was being discussed in the light of the plead-ings, the evidence, and the motion made. From such discussion, the conclusion followed that "plaintiff charged a tort, proved a contract, and asked judgment," which cannot be permitted, unless, indeed, the rule of pleading is different when a common carrier, and not a pri-vate citizen, is being sued.

In the case at bar, the defendant made a lawful contract with plain-tiff. That contract in no manner violated the provisions of § 5678, Rev. Codes 1905, with reference to exempting defendant from lia-bility for negligence. Plaintiff must have known that fact. His coun-sel in argument concedes it; and yet, because the suit is brought against a common carrier, a special privilege is invoked, which would result in violating well-settled rules of pleading, to the utter confusion of that uniform practice so essential in securing justice in the courts of the land.

The discussion of the matter by counsel upon the rehearing, and their complete briefs filed, serve only to amplify and make clear the rule adopted by the court in the first instance. In addition to the cases cited and considered in the main opinion counsel for plaintiff calls attention to the cases of Nicoll v. East Tennessee, V. & G. R. Co. 89 Ga. 260, 15 S. E. 309, and Estes v. Denver & R. G. R. Co. 49 Colo. 378, 113 Pac. 1005, and cases in that opinion cited.

In Nicoll v. East Tennessee, V. & G. R. Co. supra, there is no dis-cussion of the principles invoked whatsoever. It is simply a *per curiam* decision, "Judgment reversed."

In the Colorado case (Estes v. Denver & R. G. R. Co.), it must be conceded that language is used fully sustaining plaintiff's contention. Yet, when the pleadings are examined, it will be noticed that, unlike

the case at bar, there is found no general denial; while in the answer a special contract was pleaded, and a reply followed, admitting the contracts. A failure to deny the allegations of the complaint was tantamount to admitting them to be true, and evidently reliance was laid wholly upon the defense of a contract. The facts in that case seem also to be different from those in the case at bar. The court, in referring to them, uses this language (49 Colo. 387, 113 Pac. 1008): "Where, then, as in the present instance, the carrier undertakes *by special contract to exempt itself from liability* for negligence [the italics are ours], such contract to that extent is a nullity. Consequently the carrier is still liable for negligence as at common law, and necessarily suit may be maintained by the shipper for a breach of the carrier's duties in this respect. In other words, *in such circumstances,* the carrier is not liable for the violation of the terms of a special contract, but for the violation of a duty imposed by law, which it cannot escape by contract."

In the case at bar, we are not dealing with a contract which undertakes "to exempt itself [the defendant] from liability for negligence," but, upon the contrary, with an agreement, every part of which concededly recognizes the liability for negligence, but, coupled with that, for the consideration of reduced rates given, are found new contractual relations between the parties, every one of which is legal.

In attempting to analyze the apparent conflict between the cases, it seems to us there has been a failure to recognize certain fundamental principles always found existing in cases where dealings are had with common carriers. Counsel for defendant, on rehearing, have pointed out so clearly these relations that we quote directly from their brief (page 6): "It seems that this case is made intricate and puzzling only because of a failure to carefully discriminate between the common-law liability, and the contractual liability, and the use of general expressions, which, it is claimed, cover both situations. If we had a case where the statutory and contractual liability was the same as the common-law liability, then it is possible, and it would not be unreasonable, to establish a rule that all of the matters in controversy could be determined in one action; for there would then be no conflict as between the common-law liability and the contractual liability, and the modifications contained within the contract would not change the *nature* of the liability, but would merely go to incidents connected with the *same*

*kind of liability* that was present under both the common-law liability and the contractual liability; and this is where counsel has been misled, and where some of the decisions do not discriminate when they use the term 'special contract.' In many of the cases, the special contract referred to is nothing more nor less than a bill of lading, a shipping receipt, or an instrument signed by both parties—papers which do not change the nature of the liability, nor the relations of the parties, but merely contain restrictions or modifications of that liability. That, however, is not the fact in this case; for we do not have a contract in which the liability is the same as a common-law liability, but we have a contract in which the liability of the carrier has been absolutely and directly changed by the agreement of the parties for a special consideration going to the benefit of the shipper, and which he accepts. It cannot be disputed but that there is an entire change in the nature of the liability, and, in fact, the entire groundwork of liability is different."

As was stated in Baltimore & O. S. W. R. Co. v. Ragsdale, 14 Ind. App. at page 410, 42 N. E. at page 1107: "The complaint declares upon the common-law liability. It did not declare upon the special contract,—the bill of lading. It seems to be settled by the decisions in this state that, if the shipper declares upon an implied contract, or the common-law liability, and it appears that the shipment was made in pursuance of a special contract, or bill of lading, he must fail. The moment it appears that the contract is a special one, and was not an implied one, there is a fatal variance, and it would be the duty of the court to instruct or find for the defendant." See also Stewart v. Cleveland, C. C. & St. L. R. Co. 21 Ind. App. 218, 52 N. E. 91; Honeyman v. Oregon & C. R. Co. 13 Or. 352, 57 Am. Rep. 20, 10 Pac. 630; Brounton v. Southern P. R. Co. 2 Cal. App. 173, 83 Pac. 265; Stump v. Hutchinson, 11 Pa. 533; Nashville, C. & St. L. R. Co. v. Parker, 123 Ala. 683, 27 So. 323, 324; Harris v. Hannibal & St. J. R. Co. 37 Mo. 309, 310; Indianapolis, D. & V. R. Co. v. Forsythe, 4 Ind. App. 326, 29 N. E. 1138; Baltimore & O. S. W. R. Co. v. Ragsdale, 14 Ind. App. 406, 42 N. E. 1107, supra; Davidson v. Graham, 2 Ohio St. 132; Parrill v. Cleveland, C. C. & St. L. R. Co. 23 Ind. App. 638, 55 N. E. 1031; Lake Shore & M. S. R. Co. v. Bennett, 89 Ind. 471; Kimball v. Rutland & B. R. Co. 26 Vt. 247, 62 Am. Dec. 567; Baltimore & O. R. Co. v. Rathbone, 1 W. Va. 87, 88 Am. Dec. 665; Squire v. New

York C. R. Co. 98 Mass. 239, 93 Am. Dec. 165–167; Camp v. Hartford & N. Y. S. B. Co. 43 Conn. 333; George N. Pierce Co. v. Wells, F. & Co. 110 C. C. A. 645, 189 Fed. 561. And, as involving the principles, see also Exposition Cotton Mills v. Western A. R. Co. 83 Ga. 441, 10 S. E. 113; Harris v. Hannibal & St. J. R. Co. 37 Mo. 307; Hackett v. Bank of California, 57 Cal. 336; Minneapolis Harvester Works v. Smith, 30 Minn. 399, 16 N. W. 466; Walter v. Bennett, 16 N. Y. 253; Kewaunee County v. Decker, 34 Wis. 378. See also 3 Enc. Pl. & Pr. 849; 6 Cyc. 513.

The order and judgment of the lower court are affirmed.

Burke, J., disqualified.